(No. 13782.—Decree affirmed.)

MARIE JOSEPH *et al.* Plaintiffs in Error, *vs.* THE WIELAND DAIRY COMPANY *et al.* Defendants in Error.

*Opinion filed April 21, 1921—Rehearing denied June 9, 1921.*

1. INJUNCTION—*complainant must show he will be injured in case relief is not granted.* Equity will not entertain jurisdiction and issue an injunction unless the complainant shows that he will be injured if relief is not granted; and the allegations must be clear and distinct that substantial injury will be sustained, as an injunction will not be granted to allay the fears of complainants which are not based upon facts showing a reasonably probable cause for apprehension.

2. SAME—*when equity will not restrain threatened violation of ordinance.* A court of equity will not, at the suit of an individual, restrain the threatened violation of an ordinance regulating the erection of buildings where the injunction is sought merely for the enforcement of the ordinance and not because of special damage to the individual, but where it is shown that in addition to the violation of the ordinance the erection will work special and irreparable injury to the property of the individual he may obtain relief by injunction.

3. NUISANCES—*an individual cannot maintain action for public nuisance unless he shows special injury.* A private citizen cannot call upon a court of equity to enjoin an injury threatened to purely public rights, and he cannot maintain an action at law for a public nuisance unless he has been personally injured in a manner different from the injury to the public, and unless the special injury is alleged and proved there can be no recovery.

4. SAME—*livery stable is not a nuisance as a matter of law.* A stable in which horses are kept, even in a residence district of a large city, is not necessarily a nuisance as a matter of law.

5. SAME—*when individuals cannot enjoin erection of a stable.* Equity will not, at the suit of individual property owners, enjoin the erection of a stable for the dairy business where there is no allegation of any fact from which it can be inferred that the stable, when completed and in use, will be conducted in such a way as to be a nuisance or that complainants' property will be depreciated in value or their comfort in any way interfered with, the only complaint being the alleged violation of an ordinance.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

SAMUEL G. HAMBLEN, for plaintiffs in error.

SAMUEL A. ETTELSON, Corporation Counsel, (BERTH-OLD A. CRONSON, and CARL F. LUND, of counsel,) for defendant in error the commissioner of buildings of the city of Chicago.

EDWARD MAHER, for defendant in error the Wieland Dairy Company.

Mr. JUSTICE DUNN delivered the opinion of the court:

On November 20, 1920, Marie Joseph and others filed their bill in the superior court of Cook county against the Wieland Dairy Company and the commissioner of buildings of the city of Chicago, alleging that the complainants were the owners, severally, of lots 28 and 29 in block 8 and lots 28 and 29 in block 7 of Belmont Gardens, a subdivision of a part of the northeast quarter of section 27, township 40, north, range 13, east, in the city of Chicago, and that they resided with their families, respectively, on said premises; that said premises adjoined the east side of Tripp avenue and Kearsarge avenue, and constituted all the property on the east side of those avenues between Barry avenue and Wellington street. Nelson street is an east and west street between blocks 7 and 8, which intersects the east side of Tripp avenue but does not cross it. Between Barry avenue on the north and Wellington street on the south there are four houses on the complainants' lots, occupied as residences by the complainants, respectively, which front either north or south,—that is, one fronts north on Barry avenue, one north and south on either side of Nelson street, and one south on Wellington street. On the west side of Kearsarge avenue and Tripp avenue, from Wellington street to Barry avenue, the property extending a short distance west to the right of way of the Chicago, Milwaukee and St. Paul railroad is all vacant. The Wie-

land Dairy Company is the owner of the east 142 feet of lot 5 and the east 112 feet of lot 6 in block 5 of Cushing's subdivision of a part of the northeast quarter of the same section 27 as Belmont Gardens. Said lots 5 and 6 are on the west side of Tripp avenue opposite lot 28 in block 7 of Belmont Gardens and a part of Nelson street. On November 19, 1919, the commissioner of buildings of the city of Chicago, pursuant to an application theretofore made by the Wieland Dairy Company, issued to it a permit to erect, construct and maintain on its premises, lots 5 and 6 in block 5 in Cushing's subdivision, a building to be used as a milk-receiving, bottling and distributing station, and as a part thereof were included the plans and specifications filed with the building commissioner, including a space 40 by 104.6 feet for the erection and maintenance of forty-two stalls, wherein the horses to be used by the Dairy company in its business should be stabled, fed and cared for. When the permit was issued there was in force in the city of Chicago an ordinance which required a permit from the commissioner of buildings for the erection, enlargement, alteration, repair or removal of any building or structure in the city, and declaring it unlawful to proceed with the erection, enlargement, alteration, repair or removal of any building, or any structural part thereof, unless such permit should first have been obtained, and that if, after it had been granted, the operations called for by it should not be begun within six months after its date or were not completed within a reasonable time the permit should be void until an extended permit should be taken out by the owner or his agent. No operations were begun under the permit until about the first of November, 1920,—long after the expiration of six months from its date,—and at the time of the filing of the bill the erection of the structure had progressed only so far as the doing of some excavation and the installing of some concrete and stone work for walls. The bill sets out paragraphs 75, 78, 82, 83 and 84 of

section 1 of article 5 of the Cities and Villages act and a number of provisions of the building ordinances of the city of Chicago, among them section 601, which is as follows:

"Sec. 601.   *   *   *   (b) It shall be unlawful for any person, firm or corporation to construct, locate, conduct or maintain any boarding, sales or private stable or barn for stabling or keeping of horses on the front two-thirds of any lot on any street where one-half of the buildings on both sides of the street between the next nearest inter-secting streets are used exclusively for residence purposes, without the written consent of a majority of the property owners according to frontage on both sides of the streets. Such written consent shall be obtained and filed with the commissioner of buildings before a permit is issued for the construction or alteration of any building or place for such purpose:   Provided, that in determining whether one-half of the buildings on both sides of the street are used exclusively for residence purposes any building fronting upon another street and located upon a corner lot shall not be considered."

The bill also sets out that in the subdivision of Belmont Gardens, and in the deeds to all owners of lots therein, there were certain limitations and restrictions which are set out. It is then averred that the proviso of section 601-b of the building ordinances, "that in determining whether one-half of the buildings on both sides of the street are used exclusively for residence purposes any building fronting upon another street and located upon a corner lot shall not be considered," is unreasonable, discriminatory, invalid and void, because it limits the parties entitled to object or consent to those whose residences face the proposed erection, though other residences are as much subject to the damage, inconvenience and discomfort arising from the construction of the stable as if the residences fronted on the proposed erection. The complainants represent that unless an injunction is issued the structure in process of construc-

297—37

tion will be wrongfully and unlawfully erected, constructed and maintained, to the personal discomfort of the complainants and each of them and the respective members of their families, and that the complainants will suffer grave and irreparable injury. The prayer of the bill is that the court declare section 601 of the ordinances is valid except the proviso, and that the proviso is unreasonable, discriminatory and void, and that the court decree that before the dairy company can erect any building on lots 5 and 6, or either of them, it shall obtain consent from all property owners from Barry avenue to Wellington street, as provided by the ordinance, and that the consent of residents on such corner lots facing away from the street upon which a contemplated edifice subject to regulation is to be installed must be counted in determining the owners and residents upon such street.

The complainants having made a motion for a temporary injunction, separate demurrers were filed by the defendants, which were sustained, and complainants electing to stand by their bill, the court ordered it dismissed for want of equity. The complainants sued out a writ of error, and claim that the proviso to the ordinance is void because it contravenes section 22 of article 4 of the constitution.

The plaintiffs in error insist upon the validity of the ordinance except the proviso. The defendants in error insist that the whole ordinance is valid, including the proviso. The foundation of the case of the plaintiffs in error is that the dairy company is proceeding to erect its building without a valid permit from the building commissioner and without having procured the residents' consent, as required by the ordinance as construed by the plaintiffs in error, rejecting the proviso as invalid. The bill contains no allegation of any injury or damage to the plaintiffs in error or their property. In this respect it alleges only that the structure in process of construction will be wrongfully and unlawfully erected, constructed and maintained, to the per-

sonal discomfort of the complainants and each of them and the respective members of their families, and that the complainants will suffer grave and irreparable injury.

The rule is thoroughly established that equity will not entertain jurisdiction and issue an injunction unless the complainant shows that he will be injured if relief is not granted, and the allegations must be clear and distinct that substantial injury will be sustained. (*Allott* v. *American Strawboard Co.* 237 Ill. 55; *Springer* v. *Walters,* 139 id. 419.) A private citizen cannot call upon a court of equity to enjoin an injury threatened to purely public rights. (*Springer* v. *Walters, supra; City of Chicago* v. *Union Building Ass'n,* 102 Ill. 379.) So he cannot maintain an action at law for a public nuisance unless he has been personally injured, and in such case the special injury is the gist of the action, and unless it is alleged and proved there can be no recovery. (*McDonald* v. *English,* 85 Ill. 232.) A court of equity will not at the suit of an individual restrain the threatened violation of an ordinance regulating the erection of buildings where the injunction is sought merely for the enforcement of the ordinance and not because of special damage to the individual, but where it is shown that in addition to the violation of the ordinance the erection will work special and irreparable injury to the property of the individual he may obtain relief by injunction. (*Mt. Vernon First Nat. Bank* v. *Sarlls,* 129 Ind. 201.) In *Griswold* v. *Brega,* 160 Ill. 490, the *Sarlls case* was referred to, and the court, without considering whether the doctrine announced was in accord with the weight of authority, held the bill in the case before the court was properly brought to enjoin the removal of a wooden building in violation of the fire ordinance of the city, in close proximity to the complainant's property, in view of the allegation and proof that the removal of the building would permanently injure the complainant's property, would expose its buildings to greater danger from fire, would in-

crease the fire hazard of the neighborhood and make the complainant's property less marketable and salable. The same conclusion was reached in a similar case, where the court found that the removal of the building would substantially increase the rate of insurance and depreciate the market and rental value of the complainant's property. *Patterson* v. *Johnson,* 214 Ill. 481.

In *Hoyt* v. *McLaughlin,* 250 Ill. 442, a bill was brought to enjoin the maintenance of a dram-shop which the defendant was illegally conducting in violation of law and the city ordinances, and alleged that the saloon and its patrons were a constant source of annoyance to the complainant's tenants of the neighboring premises; that the complainant could not rent his premises for dwellings and stores advantageously and was forced to rent the dwellings at a greatly reduced rent, and that the class of tenants who would rent such dwellings and stores while the unlawful dram-shop was operated embraced a larger number than there would otherwise be of persons who are unable to pay their rent when due and often fail wholly to pay their rent; that the damage and injury occasioned by maintaining and operating the dram-shop were great and irreparable, and the complainant would continue to suffer such damage and injury unless the defendant should be enjoined from further conducting and operating the dram-shop. The court stated the question to be whether such a nuisance could be abated at the suit of a private person, and that the answer to this question depended upon whether an individual has suffered special damage different from that suffered by him in common with the public. It was said that "the rule is well settled by the decisions of this and other States that a public nuisance will not be enjoined at the suit of a private person unless the nuisance causes such person a special and particular injury distinct from that suffered by him in common with the public at large. In cases where no private or special injury is caused to an

individual an action to abate the nuisance must be instituted by or in the name of the public. But a public nuisance may also be a private nuisance, (Wood on Nuisances, sec. 674,) as where the property of an individual is injured in a manner special to him and different from the injury to the public." The opinion quoted from *Wesson* v. *Washburn Iron Co.* 95 Mass. 95, in which the court said: "The real distinction would seem to be this: That when the wrongful act is of itself a disturbance or obstruction only to the exercise of a common and public right the sole remedy is by public prosecution, unless special damage is caused to individuals distinct from that done to the whole community. But when the alleged nuisance would constitute a private wrong by injuring property or health or creating personal inconvenience and annoyance for which an action might be maintained in favor of a person injured, it is none the less actionable because the wrong is committed in a manner and under circumstances which would render the guilty party liable to indictment for a common nuisance."

In *King* v. *Hammill*, 97 Md. 103, the court refused to enjoin, at the suit of an individual, the erection of a horse stable on a line of a city street, in violation of an ordinance forbidding the building of such stable within twenty feet thereof. In *Hagerty* v. *McGovern*, 187 Mass. 479, the court refused to enjoin the building of a house with a wooden wall within three feet of the boundary line between the adjacent lots, in violation of a city ordinance.

A stable in which horses are kept, even in a residence district of a large city, is not necessarily a nuisance as a matter of law. (*Oehler* v. *Levy*, 234 Ill. 595.) There is no allegation of any fact from which it can be inferred that this stable, when completed and in use, will be conducted in such a way as to be a nuisance or that the complainants' property will be depreciated in value or their comfort in any way interfered with. The sole fact complained of is the violation of the ordinance, and this, with-

out showing any other fact, is not sufficient from which to draw the inference that the structure would be so constructed as to cause personal discomfort to the complainants or injury to their property. An injunction will not be granted to allay the fears of the complainants which are not based upon facts showing a reasonably probable cause for apprehension. The bill was without equity on its face and the demurrer to it was properly sustained.

The decree will be affirmed.        *Decree affirmed.*

---

(No. 13798.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE A. STAMATIDES *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1921—Rehearing denied June 9, 1921.*

1. CRIMINAL LAW—*a judge's certificate of proceedings in his presence must be accepted as correct.* On appeal from a judgment and sentence after denial of a motion to withdraw a plea of guilty, the recitals in the certificate of the judge as to what was said and done by him and what occurred in his presence must be accepted as true and correct.