In the Matter of Joyce Properties, Inc., Petitioner, *v.* Alexander Rubi, Respondent.

Civil Court of the City of New York, Trial Term, New York County,
January 27, 1967.

*Julius B. Sucher* for petitioner. *Joseph G. Winan* for respondent.

MAURICE WAHL, J. This is a holdover summary proceeding seeking a final judgment of eviction based on alleged violations of the substantial obligations of the tenancy. The landlord-petitioner contends that the tenant has created and is continuing to create a nuisance in violation of section 52 (subd. b) of the Rent, Eviction and Rehabilitation Regulations of the City Rent and Rehabilitation Administration and section 564–15.0 of the Administrative Code of the City of New York.

The evidence adduced on the trial reveals that the tenant has resided in 101 West 55th Street, Borough of Manhattan, a large apartment house, for over 25 years and is now and has been for some time a statutory tenant. The incontrovertible evidence is that the tenant has been feeding a great number of pigeons and harboring some of them in the apartment. Pigeon excretions are abundant in the area contiguous to the apartment. An official of the Public Health Department designated as a public health sanitarian and assigned as an expert pigeon control consultant testified that pigeon excretions can be a basis of serious diseases. The police and the Health Department representative made many visits in an effort to induce the tenant to stop feeding the pigeons and were refused admittance. There was further evidence that a multitude of pigeons gather near the apartment and that the tenant feeds them as much as 25 or 30 pounds of food daily, some of which is not eaten and remains about the premises; and that there is a circulating air-conditioning machine near the excreta which can be strewn through the wind, and may be the basis of various diseases and a menace to the health of the community, and a great danger exists that unwelcome diseases such as parrot fever, histo-plasmosis, encephalitis and meningitis could be transmitted and

spread to children as well as adults. Inhalation of the dust particles carrying the dry infected pigeon droppings may cause many ailments.

Miss Stella Farre, an opera singer, who is a tenant in the apartment adjacent to the tenant herein, testified that the feeding of the pigeons took place at least four or five times a day and that the noise of the pigeons prevented her from sleeping and that there are offensive odors attributable to the pigeons, some dead, and that the feeding time began about 5:30 A.M.; that she sought to have the practice discontinued but to no avail and that the noise and the odor were indescribable. Even ear plugs were ineffective to eliminate the noise of over one hundred pigeons which gather to satisfy their voracious appetites.

Testimony from police officers who were there on occasion indicates intolerable living conditions in the apartment and that they gained admission thereto only when they sought to remove the cylinder from the tenant's door after the polite knocking was ignored. The occasion for the visit was a leak from the apartment to the Chinese laundry below. Upon entry into the apartment it was found in complete darkness and certain sheets covering the furniture were dirty and soiled, and boxes were all over the apartment. The wife of the tenant admitted to the officer that she fed the pigeons; and, another of the police officers saw some pigeons in the apartment and that one of them was walking behind him and that Mrs. Rubi called the pigeon by the name of Bravo. He also observed a feeding bowl in the kitchen.

The president of the landlord corporation testified that on various occasions he sought to speak to the tenant or his wife but they refused his admittance and that on the telephone Mrs. Rubi threatened to report him to the A.S.P.C.A. if he bothered her about the pigeons and that during the 23 years he has been the president of the landlord corporation the tenant never sought or requested painting or any repairs to the apartment. The tenant freely admitted the main allegations of the petition; and the tenant's wife, though in the courtroom throughout the lengthy trial, refused to testify.

Obviously, feeding wild vagrant pigeons could lead to great harm to the people, as the excreta could cause serious disease. Under sections 564–15.0 and 564–16.0 of the Administrative Code of the City of New York the Health Department has authority to abate pigeon nuisance. In addition thereto, the testimony of the tenant in the adjacent apartment and the evidence presented in great detail by others, coupled with the graphic photographic evidence as to the result of feeding the pigeons, the odors, the

inability to sleep, and the complaints by others, satisfy the test that the acts complained of "work annoyance, harm, inconvenience and damage to another". Aside from the fact that the acts complained of and detailed by the public health sanitarian constitute a public nuisance, it is now unnecessary to pass on that proposition, as the court is constrained to conclude that the tenant's conduct has created a private nuisance.

A nuisance is "anything that by its use or by its permitted existence works annoyance, harm, inconvenience or damage to another". (*Tenperal Homes* v. *Italiano*, 140 N. Y. S. 2d 148, 149.)

The tenant has been indifferent and impervious to the protestations of others, so much so that the tenant and his wife have isolated themselves in self-imprisonment by never answering the knocks on the locked door to their apartment. They have conducted themselves over a period of time in a wholly unreasonable manner and, as this court believes, have substantially interfered with the normal enjoyment of the premises by the neighbors and are interfering substantially with the health, comfort and safety of others. The actions of the tenant constitute an unabated private nuisance in violation of the health code and the eviction regulations and are ground for immediate eviction. (*People* v. *Miller*, 304 N. Y. 105; *Di Lella* v. *O'Brien*, 187 Misc. 922 [1946]; *People* v. *Arkow*, 204 Misc. 635; *People* v. *Ehrlich*, 14 N. Y. S. 2d 125; *Kraushaar* v. *Zion*, 188 Misc. 851; *Blozevich* v. *Tasber*, 116 N. Y. S. 2d 801; *People* v. *McOmber*, 206 Misc. 465; *Town of Mount Pleasant* v. *Van Tassell*, 7 Misc 2d 643.)

As this court stated in *Matter of Dunbar Paint Supply Corp.* v. *Hunt* (36 Misc 2d 896, 897) in directing a final order in favor of the landlord in the case wherein the tenant harbored 25 cats: "the tenants in this apartment house have, indeed, been long-suffering or stoical, and the time has come to call a halt to the unhealthy and unusual situation in this building."

Therefore, the petitioner, the landlord herein, is entitled to final judgment against the tenant, and the issuance of the warrant is stayed to February 28, 1967, upon conditions heretofore filed by the court on January 18, 1967.