Bertram Harnett, J.
Four residents of the Town of Hempstead bring this action for damages and injunctive relief against a tire service shop in their neighborhood, the Hewlett House of Tires Corporation, its president George Pasquaretto, and the town. They claim that the shop’s existence and operation violate local zoning ordinances, and also constitute a nuisance. A nonjury trial was held, with subsequent submission of legal memoranda'by the parties.
The Hewlett House of Tires came about in 1961, when Mr. Pasquaretto signed a lease for the premises, including a com *406 mercial building. Its business was conducted mainly inside the structure, without adverse reaction or complaint by anyone in the neighborhood until 1969. Then it apparently undertook, in addition to tire service, certain automotive activity, such as installation of mufflers, brakes and shock absorbers, the selling of used cars, front wheel alignment, and auto body painting. Much of the increased activity took place outdoors, with greater noise and fume disturbances to the immediate neighbors, who, in turn, claim both zoning and environmental infractions in their present lawsuit, seeking recompense for injury and future protection.
In recent times, particularly after the bringing of this action, the commercial activity on the premises apparently has been, and is now, confined to tire installation and service.
A. WHAT ACTIVITIES ARE PERMITTED BY HEMPSTEAD TOWN ZOSTIHG LAW?
The Hewlett House of Tires is in an unincorporated area located along Broadway in Hewlett, and is within a “ Business District” as defined under the town’s zoning ordinances. Abutting the rear of this parcel are plaintiffs’ properties, which are zoned “ Residential,” and face onto another street parallel to Broadway. The focal issue becomes, then, whether the land uses on the Hewlett House of Tires property are permitted in a “ Business District ’ ’.
Article 7 of the Building Zone Ordinance of the Town of Hempstead specifies the permissible activities in a Business District. It provides, in pertinent part: “ Sec. X-1.0 [A] lot or premises may be used for any of the following purposes and for no other: * * *
‘' Sec. X-1.7 Store for the sale at retail of articles to be used or consumed off the premises, which is not subject to the provisions of Section X-1.14 hereof * * *
“ Sec. X-1.9 Gas filling station or battery and tire service station when approved as a special exception by the Town Board * * * ■
“ Sec. X-1.14 Special Uses: Special uses when approved by the Board of Zoning Appeals pursuant to Article 12, Section Z-5.0.”
Section Z-5.0 of article 12 of the Town Building Zone Ordinance states, in pertinent part:
“ The Board of Appeals may, after public notice and hearing, permit the following uses in the districts designated: * * *
*407 ‘ ‘ In a Business District:
“ 3. Public garage, minor garage, motor vehicle repair shop * * *
‘ ‘ 4. Storage warehouse * * * storage of motor vehicles * * * when not accessory to premises used primarily for the sale thereof. * * *
“ 7. Store or salesroom or open lot for the display or sale of used cars * * *
“ 16. Accessory use in the same lot with and customarily incidental to any use expressly permitted in a business district ”.
The Hewlett House of Tires has never applied for a variance or special use permit. Since the ordinance lists all of the uses that are allowed without approval by the Town Board, the House’s present activities, to be lawful in purpose, must fall wholly within at least one listed category. The expanded goings-on, involving wide ranging automotive repair, were certainly prohibited without obtaining a special use permit, but since they have now ceased, their legality under the zoning code, for purposes of injunctive relief, is a moot question. We are left then to decide if the sale and installation of automobile, truck and tractor tires, alone, are allowed without board permission.
Only one category avails itself here for possible nonpermit propriety, and that, under section X-1.7 of article 7 of the Town Building Zone Ordinance, is the sale of retail goods ‘1 to be used or consumed off the premises ”. But here, although the tires are presumably used or consumed away from the shop, the commercial shop activity is not simply a retail sales operation. There are two acts happening, the sale and installation of tires. Accordingly, the House’s hopes are punctured on at least two grounds. For zoning purposes, tire installation is not a minor aspect of a retail sale. It is a distinct service activity involving automobile storage and moving, pneumatic tools and old tire disposal, with their own impact on surrounding land appearance and usage. A strict reading of the nonpermit allowed uses is required, particularly for land that abuts residential property. At best, even viewed as an accessory use for the permitted sale of tires, installation and service require a special use permit under section Z-5.0 (subd. c, par. 16) of the town code. Moreover, section X-1.7 of article 7, permitting retail sales, is, by its own terms, rendered inoperative where the activity pursued requires a special use permit. We find below that tire service would indeed require such a permit. It far exceeds then, in scope and daily operation, the mere retail sale of take-away *408 goods that the code allows without special approval by the board.
Therefore, in order for tire service and installation to be allowed under any circumstance, the Hewlett House of Tires’ activity must fall within a special category which under the town ordinance is permitted but only after permit obtainment. In' arguing that tire service falls wholly outside the listed activities, the House fails to comprehend that the ordinance says, ‘ ‘ no other ’ ’ uses are allowed, and that if upheld, its contention would necessarily mean finding a prohibited use now in operation, which cannot even be corrected by appropriate presentation to, and approval by, the town board.
The court finds tire service to be permitted only upon permit obtainment. Two zoning provisions lead to this conclusion.
' Section X-1.9 provides that a ‘ ‘ battery and tire service station ” requires a special exception. While the Hewlett House of Tires has no battery service, the nature of its activities, again for zoning purposes, is Sufficiently coterminous with the specified combined ‘ ‘ tire and battery service ” as to fall within the provision. Certainly, the servicing of tires is a far more substantial use in terms of neighborhood impact than battery "service. The ordinance does use the conjunctive word “ and ”. But, the absence of one element, battery service, the minor one for purposes of zoning consideration, does not automatically render the code provision inapplicable where the nature of the service use, environmentally, remains essentially the same as the specified combined service.
We are even more compelled to this conclusion by realizing that a technical application of the code would render tire service alone, as distinct from specially excepted tire and battery service, a prohibited use.
Alternatively, tire service might fall within the broad categories denominated as “ Special Uses ”. Its repair and storage aspects, and its being an accessory use “ incidental to ” the sale of tires for use off of the premises, both qualify for special use permit obtainment under suitable conditions.
in sum, the Hewlett House of Tires must obtain a permit or special exception in order to continue its present operations. In view of the long period of time that tire service has been operative without disturbance or prosecution by the town, the Hewlett House of Tires shall be given a reasonable opportunity to seek a permit from the town board and shall be allowed to reasonably continue its operation in the interim. The town’s acquiescence in the tire service without permit is, however, not a waiver of *409 the requirement, as indeed the ordinance does not provide for the requirement to be waived. Nor was there sufficient evidence of an actual permit waiver by the town in 1961.
B. nuisance to neighbors
We must examine whether further relief is warranted on plaintiffs’ theory of nuisance. A zoning infraction is not necessarily a nuisance.
The common-law doctrine of nuisance has received renewed vitality in recent times with the advent of modern environmental sensitivities. Emphasis on preservation of outdoor-life qualities is not confined to wholly natural or biological wildlife. It serves to prevent destruction of the environment whether in remote national parks, inland waterways, or suburban residentia. The rules for permissible land use with direct impact on neighboring property have become far more strict, and the sensitivity to noxious intrusions far keener (see Caso v. Gotbaum, 67 Misc 2d 205, revd. on other grounds 38 A D 2d 955, after remand sub nom. Caso v. District Council 37, 43 A D 2d 159).
The nuisance here, if any, is a private nuisance with annoying impact only upon immediate landowners (Khoury v. County of Saratoga, 243 App. Div. 195, affd. 267 N. Y. 384). A private nuisance is generally anything that by its continuous use or existence works annoyance, harm, inconvenience or damage to another landowner in the enjoyment of his property (Matter of Joyce Props, v. Rubi, 52 Misc 2d 825, affd. 54 Misc 2d 360; Blessington v. McCrory Stores Corp., 198 Misc. 291, affd. 279 App. Div. 807, affd. 305 N. Y. 140). Its actionability is not determined by a showing of negligence, but rather upon the demonstrated unreasonableness of the nuisance creator in view of his own needs and those of his neighbors (Waters v. McNearney, 8 A D 2d 13; affd. 8 N Y 2d 808).
There is no doubt that in the post-1969 era, the Hewlett House of Tires’ proliferated activities were a nuisance to the community around it. The testimony of plaintiffs showed that piled up debris, burned tires emitting thick black smoke, offensive outdoor pneumatic sledge hammer and repair noises, and gasoline and diesel fumes assaulted the immediate neighborhood from the Hewlett House of Tires. Eye irritation, particularly in Mrs. Mandell’s case, resulted, and at various times the use of plaintiffs ’ backyards had to be curtailed. Mr. and Mrs. Mandell, Mr. Gobetz, and a next-door neighbor to the Mandells, Ellen Fetner, all testified to this effect, and the court finds their statements to be credible and consistent.
*410 The defenses offered by the Hewlett House of Tires are simply inadequate. The existence of a “Dairy Barn” nearby in no way alleviates the harmful impact of the pursued activities. Nor does the pre-1969 period, or the number of employed persons at the House, offer any justification for the environmentally harmful activity at issue.
The court therefore concludes that the cited activities of the Hewlett House of Tires during 1969 to 1972 constituted a private nuisance in the respects particularized above. The nuisance materially diminished the ability of plaintiffs to use and enjoy their property, and caused considerable annoyance and some physical adversity (see Stock v. Ronan, 63 Misc 2d 735). Even though some of the nuisance now appears abated and the noxious uses will be permanently enjoined, the court believes that the greater current emphasis on environmental protection and the individual damage caused warrant parallel compensatory payment for past damages caused. Otherwise, a wrong is inflicted without any opportunity for legal recompense (Miller v. Edison Elec. Illuminating Co. of N. Y., 184 N. Y. 17; Rock v. Acker Process Co., 112 App. Div. 695, affd. 188 N. Y. 604). The court finds, then, that the damage sustained by Mr. Mandell was $500, by Mrs. Mandell, $1,000, and by the Gobetzes, $500 (Gerow v. Village of Liberty, 106 App. Div. 357; cf. St. George’s Syrian Catholic Church v. Eisenstein Assoc., 34 A D 2d 947; Boomer v. Atlantic Cement Co., 26 N Y 2d 219).
O. BELIEF GBAETED
Accordingly, judgment is granted in favor of plaintiffs: (1) declaring that the installation and servicing of tires is a purpose requiring a special exception or special use permit under article 7 of the Building Zone Ordinance of the Town of Hempstead; granting defendants Hewlett House of Tires and Pasquaretto up to 30 days, from the date of being served with a copy of the judgment to be made herein, to apply to the town board for a special exception and/or special use permit; and directing that defendants, pending that period and application, if any, restrict their enterprise to tire sale and installation only, inside their building; and further directing that, should no permit application be made or, if made, one is denied after final review, within two months after filing, the tire service business shall be enjoined altogether;
(2) permanently enjoining those same defendants from burning tires, causing extreme exterior pneumatic or repair noises, *411 and permitting excessive gasoline or diesel fumes to be exhausted; and
(3) granting money damages in the amount of $500 for Mr. Mandell, $500 for the Gobetzes, and $1,000 for Emily Mandell