WESTGATE TERRACE COMMUNITY ASSOCIATES, INC., Plaintiff-Appellant, *v.* BURGER KING CORPORATION *et al.*, Defendants-Appellees.

First District (2nd Division)   Nos. 77-1108, 77-1376 cons.

Opinion filed November 28, 1978.

Ronald J. Clark, of Clark, Thomas & Piers, of Chicago, for appellant.

Adamowski, Newey & Adamowski, of Chicago, for appellees Burger King Corporation and Chart House, Inc.

Parrillo, Bresler, Weiss & Moss, of Chicago (Robert Parillo, of counsel), for appellees Circle Court Associates and Richard Parrillo.

Mr. JUSTICE BROWN delivered the opinion of the court:

The plaintiff condominium association filed a four-count amended complaint against the various defendants, seeking temporary and permanent injunctive relief. It also filed an amended motion for a temporary restraining order and a preliminary injunction. The gravamen of the amended complaint and amended motion was that the further construction of a Burger King restaurant with its own exterior entrance to Circle Court Shopping Center would violate a restrictive covenant, that certain existing and proposed signs would violate the zoning ordinance of the City of Chicago, and that the proposed restaurant would constitute a nuisance.

Upon defendants' motions to dismiss, the trial court entered orders striking the amended complaint and amended motion and dismissing the cause with prejudice. Plaintiff appeals pursuant to the trial court's finding no just reason for delaying enforcement or appeal. The city and its commissioners are not parties to this appeal.

Plaintiff filed its complaint on February 18, 1977, and its motion for a temporary restraining order and a preliminary injunction was filed on or about that same date. After plaintiff had been granted leave to file amended pleadings, it filed its amended complaint and amended motion on March 15, 1977.

All four counts of the amended complaint alleged that plaintiff is an Illinois not-for-profit corporation comprised of the owners of 48 condominiums known as Westgate Terrace, on the south side of Harrison Street between Racine and Throop in the City of Chicago; that defendant Circle Court Associates is an Illinois general partnership which owns and operates Circle Court Shopping Center and is the successor in interest to the National Republic Bank as to the ownership of the land on which the shopping center sits; and that the shopping center is an enclosed mall shopping center bounded on the south by Harrison Street, on the east by Throop, on the north by the Congress Expressway, and on the west by Racine Avenue.

Count I alleged that the continuing construction of a Burger King restaurant with its own exterior entrance to the shopping center would violate various agreements between the parties and between the defendants. First, it alleged that the construction would violate a restrictive covenant in the land sale contract between the city and the National Republic Bank, which required the shopping center to remain in conformance with the "Urban Renewal Plan" until May 11, 2003. The land sale contract, dated May 7, 1971, was attached to the amended

complaint as an exhibit. Second, it alleged that the construction would violate the restrictive covenant in the deed from the city to the bank, which covenant required that the property be devoted to the uses specified in the "Redevelopment Plan." The deed, dated September 22, 1971, was attached to the amended complaint as an exhibit. Third, it alleged that plaintiff "was a party to the original agreement between the City and the bank." The urban renewal redevelopment plan was not attached to the amended complaint as an exhibit, but a certain portion of it was recited in the amended complaint as providing that the shopping center "was conceived as an inward oriented center" which "permits a quiet exterior treatment which will blend with Westgate and the Circle Campus of the University of Illinois." Count I stated that the redevelopment plan was presently in the custody of the Department of Urban Renewal.

Plaintiff further alleged in count I that it gave its approval for a zoning change of the subject property from residential to commercial and that it gave its approval of the bank's redevelopment proposal to the Department of Urban Renewal.

Count I also alleged that the building permit issued to defendant Chart House, Inc., was invalid because issued contrary to normal approval procedure and that the construction violated the scope of the building permit since the permit limited construction to interior remodeling. The pleadings indicate that defendant Chart House, Inc., operates Burger King restaurants under an exclusive license from defendant Burger King Corporation. The building permit was not attached to the amended complaint as an exhibit, but a certain portion of it was recited in the amended complaint as permitting "interior remodeling of a new Burger King Restaurant." Count I stated that the city's Department of Building has care and custody of the building permit and that it was issued on August 11, 1976.

Count I prayed for an order enjoining further construction by defendants Burger King, Chart House, Parrillo and Circle Court Associates on the outside of the shopping center building; requiring the city's commissioners to revoke the building permit, to require a new application for permit, and to require its submission through the normal review procedures for property under the jurisdiction of the Department of Urban Renewal; and permanently enjoining any modification of the shopping center which would alter its enclosed mall status.

Count II alleged that four existing advertising signs on the Congress Expressway side of the shopping center violated section 9.9(4)(b) of the city's zoning ordinance, in that the signs were located within 400 feet of the expressway. The four signs allegedly advertise: (1) a Jewel food store; (2) the National Republic Bank; (3) the availability of space in the shopping center; and (4) the shopping center itself. Count II prayed for

an order directing defendants Circle Court Associates and Parrillo to remove the signs and enjoining them from erecting such signs in the future.

Count III alleged that a proposed Burger King sign on the south wall of the shopping center would violate sections 8 and 9.9(5) of the city's zoning ordinance, in that the sign would be located on that wall which is less than 75 feet from plaintiff's members' property, which property is located in a Residence District. Count III further alleged that defendant Parrillo has threatened to erect advertising signs along the entire Harrison Street side of the shopping center building, all of which signs would be in violation of the city's zoning ordinances. Count III prayed for an order enjoining the erection of the proposed Burger King sign and enjoining defendants Circle Court Associates and Parrillo from erecting any sign along the south wall of the shopping center.

Count IV alleged that the proposed Burger King restaurant would constitute a nuisance in that it will increase vehicle traffic; increase the presence of trash, garbage, waste paper, rodents, cockroaches and other vermin; increase the number of persons milling around plaintiff's members' houses; and the illumination of Burger King signs will interfere and damage the peace, quiet and comfort of plaintiff's members. Count IV prayed for an injunction enjoining defendants Burger King, Chart House, Parrillo and Circle Court Associates from breaking through the south wall of the shopping center, from erecting an entrance at the proposed point on the wall, and from erecting signs on the wall.

Plaintiff's amended motion for a temporary restraining order and a preliminary injunction contained allegations substantially similar to those contained in plaintiff's amended complaint.

All defendants filed motions to dismiss. On May 20, 1977, defendant Chart House, Inc., filed an answer which alleged that the Burger King restaurant has been constructed and is now in operation. Photographs of the restaurant, depicting interior and exterior views, are attached to the answer as exhibits. Plaintiff states in its brief that it concedes that the restaurant has been built.

On May 23, 1977, at the hearing on the motions to dismiss, plaintiff voluntarily dismissed the City of Chicago, the Commissioner of the City's Department of Urban Renewal, and the Commissioner of the City's Department of Building as defendants. During argument on the motions to dismiss, the trial court indicated that plaintiff had no standing to sue and that the building permit constituted an amendment of the urban renewal redevelopment plan. At the conclusion of the hearing, the trial court entered an order dismissing with prejudice plaintiff's amended complaint and amended motion for a temporary restraining order and a preliminary injunction as against the city and its commissioners. The trial court entered a separate order allowing Chart House, Inc., to withdraw its

answer; striking, without leave to amend, plaintiff's amended complaint and amended motion for a temporary restraining order and a preliminary injunction; dismissing the cause with prejudice; and finding no just reason for delaying enforcement or appeal.

Plaintiff appeals from the latter order, and raises the following issues for our review: (1) whether plaintiff has standing to sue with respect to count I of the amended complaint; (2) whether the issuance of the building permit constituted an amendment of the urban renewal redevelopment plan; and (3) whether plaintiff has stated a cause of action with respect to counts II, III, and IV of the amended complaint.

As regards the first issue, plaintiff contends that it has standing to enforce the restrictive covenant, which allegedly provides for a "completely enclosed shopping center," from three sources: (1) section 402 of the land sale contract between the city and the bank; (2) the rule of law which permits purchasers of land subject to building and use restrictions imposed as a part of a general plan the right to enjoin violations of such restrictions; and (3) the special nature of the relationship of it and its members to the sale of the land.

Section 402 of the land sale contract, dated May 7, 1971, provides that the covenant that the use of the property must be in conformance with the Urban Renewal Plan is enforceable by "the owner of any other land (or of any interest in such land) in the Project Area which is subject to the land use requirements and restrictions of the Urban Renewal Plan* * *."

The introductory paragraphs on the first page of the land sale contract indicate: (1) that "Project" is an urban renewal project known as "Slum and Blighted Redevelopment Project Congress-Racine;" (2) that an "Urban Renewal Plan" has been approved by the city council for the Project and has been recorded among the land records for the place in which the Project Area is situated; and (3) that Federal and city aid have been provided through a contract for loan "to make the land in the Project Area available for redevelopment by private enterprise for redevelopment for and in accordance with the uses specified in the Urban Renewal Plan, * * *."

It is uncontradicted that plaintiff's members' condominiums were constructed before Circle Court Shopping Center was constructed. At the oral argument of this cause, plaintiff's counsel stated that plaintiff's members' land is located in the "Near West Side Conservation Project." Considering these facts in connection with the provisions contained in the introductory paragraphs of the land sale contract, we conclude that plaintiff's members' land is not within the "Project Area" and that they are not subject to the land use requirements of the "Urban Renewal Plan." We therefore find that the enforcement provision in section 402 of the land sale contract between the city and the bank does not give plaintiff

standing to enforce the restrictive covenant alleged to have been violated in count I of the amended complaint.

Plaintiff maintains that it has standing to enforce the restrictive covenant because its members' land is also urban renewal land which is subject to a covenant that requires conformance with an urban renewal redevelopment plan. It cites *Housing Authority v. Church of God* (1948), 401 Ill. 100, 81 N.E.2d 500, in support. In that case, the Housing Authority and two landowners obtained an injunction against the defendant church trustees, enjoining them from erecting and maintaining a church building on certain contiguous lots. The lots were subject to a covenant in the deed which restricted their use to residential purposes. In affirming the granting of the injunction, our supreme court stated, at page 108:

> "Restrictions upon the use of property in a particular subdivision, as here, and which are imposed as a part of a general plan for the benefit of all the lots affected, give to the purchasers of the lots a right in the nature of an easement, which will be enforced against owners of other lots so affected, where the intention is clearly shown by the restrictions and the enforcement of them is necessary for the protection of substantial rights.* * *"

*Housing Authority* is distinguishable from the instant case in that plaintiff's members are not grantees of land in the "Slum and Blighted Redevelopment Project Congress-Racine," as was the National Republic Bank. Plaintiff's members are grantees of land in the "Near West Side Conservation Project," and therefore are strangers to the restrictive covenant contained in the deed from the city to the bank and in the land sale contract between the city and the bank.

In *Hays v. St. Paul Methodist Episcopal Church* (1902), 196 Ill. 633, 63 N.E. 1040, our supreme court held that a stranger to a building restriction agreement made between a grantor and grantee must show, to enforce the restriction against the grantee's successor, that the agreement was made for the benefit of the stranger's lot. "To establish complainant's right she must show the intention of the restriction to have been to benefit her lot, and this intention must arise out of the language of the deed, construed in the light of the surrounding circumstances. The intention is to be ascertained as in other cases,—not by learning some secret or unexpressed intention in the mind of King [the grantor], but from the language of the deed itself, considered in connection with the circumstances existing at the time it was executed. [Citation.] * * * If the deed, in the light of the circumstances, expresses an intention to give complainant's property the benefit of the restriction, she can enforce it in behalf of that property, otherwise not. * * *" (*Hays*, 196 Ill. 633, 636.) *Hays* was followed and quoted extensively in *VanSant v. Rose* (1913), 260 Ill. 401, 409-13, 103 N.E. 194.

In the deed from the city to the bank, the covenant numbered "First"

provides: "The Grantee shall devote the property hereby conveyed only to the uses specified in the applicable provisions of the Redevelopment Plan or approved modifications thereof, and the uses set forth in the Contract for the sale of said property."

■■ We consider the land sale contract to be one of the circumstances existing at the time the deed was executed. As previously discussed, plaintiff has no standing under the enforcement provision contained in section 402 of the land sale contract. We believe that it was the intention of the deed that the enforcement provision in section 402 of the land sale contract would continue to define which person or entity could enforce the covenant contained in the deed and land sale contract. Furthermore, we do not find that plaintiff's members' participation in the various phases of the redevelopment of the site constitutes what plaintiff has styled "a special relationship." Although they were allowed to voice their opinions regarding the redevelopment, neither they nor plaintiff were mentioned in or were signatories to the deed or land sale contract. In view of the foregoing, we find that the deed does not express an intention to give plaintiff's members' property the benefit of the restrictive covenant alleged to have been violated in count I of the amended complaint, and thus plaintiff has no standing, under the deed, to enforce that restrictive covenant. *Hays.*

As we have found that plaintiff does not have standing to sue with respect to count I of the amended complaint, we hold that the trial court did not err in striking count I and dismissing it with prejudice.

We shall not consider the second issue previously stated, since plaintiff does not have standing with respect to count I and since plaintiff voluntarily dismissed the city and its commissioners as defendants.

The last issue raised by plaintiff is whether counts II, III, and IV of the amended complaint state a cause of action. Plaintiff contends that each count is properly pleaded and states a cause of action.

■■ Count II and count III allege that certain existing, proposed and threatened advertising signs will violate certain provisions of the city's zoning ordinance. Count II and count III further allege that plaintiff has no adequate remedy at law and will be irreparably harmed if the existing signs are not removed and if the proposed and threatened signs are erected. Neither count II nor count III alleges facts in support of their respective allegations of irreparable harm. In *Joseph v. Wieland Dairy Co.* (1921), 297 Ill. 574, 579, 131 N.E. 94, our supreme court stated:

> "A court of equity will not at the suit of an individual restrain the threatened violation of an ordinance regulating the erection of buildings where the injunction is sought merely for the enforcement of the ordinance and not because of special damage to the individual, but where it is shown that in addition to the

violation of the ordinance the erection will work special and irreparable injury to the property of the individual he may obtain relief by injunction. [Citation.]"

In the case at bar, the sole fact complained of in count II and count III is the violation of the ordinance provisions, and this, without showing any other fact, is not sufficient from which to draw the inference that the existing signs are so erected or that the proposed and threatened signs will be so erected as to cause personal discomfort to the plaintiff's members or injury to their property. (*Wieland Dairy Co.* (1921), 297 Ill. 574, 581-82.) "An injunction will not be granted to allay the fears of complainants which are not based upon facts showing a reasonably probable cause for apprehension." *Wieland Dairy Co.* (1921), 297 Ill. 574, 582.

We assume, for the sake of argument, that the four existing advertising signs described in count II violate section 9.9(4)(b) of the city's zoning ordinance by having been erected within 400 feet of the expressway. However, we fail to see how the signs could cause plaintiff's members any special injury, as their property is located on the other side of the shopping center building.

As regards count III, the photographs and other exhibits contained in the record indicate that the proposed Burger King sign, which has now been erected on the south wall of the shopping center, and any threatened advertising sign that would be affixed to that wall, would not be located within 75 feet of plaintiff's members' property. Section 9.9(5) of the city's zoning ordinance provides: "No advertising sign shall be permitted within 75 feet of any property in a residence district." We find, as a matter of law, that the Burger King sign which has been erected on the south wall of the shopping center does not violate section 9.9(5) of the city's zoning ordinance.

For all of the aforementioned reasons, we conclude that counts II and III of the amended complaint fail to state a cause of action.

Count IV alleged that the proposed Burger King restaurant would constitute a nuisance in that it will increase vehicle traffic; increase the presence of trash, garbage, waste paper, rodents, cockroaches and other vermin; increase the number of persons milling around plaintiff's members' houses; and the illumination of Burger King signs will interfere and damage the peace, quiet and comfort of plaintiff's members. Count IV further alleged that plaintiff has no adequate remedy at law and will be irreparably harmed unless enjoined from the proposed construction and consequent nuisance.

In *Klumpp v. Rhoads* (1936), 362 Ill. 412, 416, 200 N.E. 153, our supreme court stated:

"When a business creates conditions which clearly render the appropriate enjoyment of surrounding property impossible, the

rights of others are invaded, and equity will restrain the persistent pursuit of such injuries. If the damages are of a nature which cannot be adequately compensated for in a suit at law, equity will afford relief by injunction. On the other hand, lawful and useful business may not be stopped on account of trifling or imaginary annoyances which do not constitute real injury. If the right to relief is doubtful, either as to the law or under the facts proved, equitable relief will not be granted. [Citations.] A private citizen cannot maintain an action to restrain a public nuisance unless he is particularly and specially injured in a manner distinct from the injury suffered by him in common with the public at large. [Citations.]"

■■ After a review of the record, we are unable to find that plaintiff's alleged facts are anything but trifling or imaginary annoyances which do not constitute real injury. It is uncontradicted that there is a Jewel food store in the shopping center with an exterior entrance to the Harrison Street side of the shopping center and an illuminated advertising sign which faces Harrison Street. At the oral argument of this cause, plaintiff's counsel stated that the allegations of count IV were probably true of the Jewel food store, but that the operation of the Burger King restaurant would be somewhat more of a nuisance. We find this argument to be without merit. Even assuming as fact an increase in vehicle traffic, trash, vermin, loitering persons, and the illumination of Burger King signs, we cannot say that plaintiff's members' property is sufficiently near to the Burger King restaurant to establish a particular and special injury distinct from any injury suffered by the public. We conclude that count IV of the amended complaint fails to state a cause of action.

■■ A complaint is properly dismissed with prejudice only where the plaintiff is entitled to no relief on the facts alleged. (*Schlossberg v. E. L. Trendel & Associates, Inc.* (1st Dist. 1978), 63 Ill. App. 3d 939, 380 N.E.2d 950. Counts II, III, and IV of the amended complaint come within the scope of this rule.

We hold that the trial court did not err in striking counts II, III, and IV of the amended complaint and in dismissing those counts with prejudice.

Accordingly, the order of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and PERLIN, J., concur.