**B & W MANAGEMENT, INC., et al., Appellants,**

v.

**TASEA INVESTMENT CO., Appellee.**

No. 81–798.

District of Columbia Court of Appeals.

Argued Feb. 25, 1982.

Decided Oct. 7, 1982.

Nicholas A. Addams, Washington, D.C., for appellants.

Rebecca L. Jackson, Washington, D.C., with whom John Lewis Smith, III, Washington, D.C., was on the brief, for appellee.

Before KERN, NEBEKER and FERREN, Associate Judges.

FERREN, Associate Judge:

■ B & W Management, Inc. (B & W) and Tasea Investment Company (Tasea) own property in the same "CR" zone in Northwest Washington, D.C. B & W operates a two-story parking garage in the CR zone.[1] B & W appeals from the trial court's order dismissing its amended complaint, which sought (1) to enjoin Tasea from operating a surface parking lot on its property, in violation of the zoning regulations,[2] and (2) to recover compensatory and punitive damages on a common law nuisance theory.[3]

■ Because the parties stipulated at oral argument that Tasea has excavated its property and cannot now use it as a parking lot, appellant's claim for injunctive relief is moot.[4] The only remaining question, there-fore, is whether the trial court erred in ruling that appellant had failed to state a common law claim for damages resulting from a nuisance attributable to Tasea. We perceive no error and thus affirm the trial court's judgment.

I.

■ "A public nuisance is an unreasonable interference with a right common to the general public." RESTATEMENT (SECOND) OF TORTS § 821B(1) (1979).[5] At common law, the term "public nuisance" covered a variety of minor criminal offenses that interfered, for example, with the public health, safety, morals, peace, or convenience. RESTATEMENT, *supra* § 821B comment b; W. PROSSER, HANDBOOK OF THE LAW OF TORTS 583–85 (4th ed. 1971). As applied to land use, therefore, public nuisance theory provides the common law underpinning (subject to statutory modification) for injunctive and damage actions based on zoning violations. *Skaggs-Albertson's v. ABC Liquors, Inc.,* 363 So.2d 1082, 1086–88 (Fla. 1978); *Renard v. Dade County,* 261 So.2d 832, 835 (Fla.1972).

1. Tasea's property is bounded by 22nd Street, 23rd Street, N Street, and an east-west alley between M and N Streets. B & W owns an enclosed parking garage on 24th Street, one block from Tasea's property, and has an "ownership interest" in property on 22nd Street, near Tasea's property.

2. B & W based its claim for injunctive relief on D.C.Code 1973, § 5–422 (recodified as D.C. Code 1981, § 5–426) which permits "any neighboring property owner or occupant who would be specially damaged by any [zoning] violation" to seek an injunction against the violator. B & W asserted that Tasea had violated 11 D.C.R.R. 4502.321, –.410 (1980), which provide that, in a CR zone, commercial parking operations must be located within a building or structure.

3. Contrary to B & W's contention at oral argument, the allegation that Tasea used its land in a way that interfered with B & W's business does not, in the alternative, support a common law action for unfair competition. *See* W. PROSSER, HANDBOOK OF THE LAW OF TORTS 956–57 (4th ed. 1971) (the following may constitute unfair competition at common law: defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, false advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor).

4. Given that excavation has begun in anticipation of construction on the site, it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n, Inc.,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968); *see In re Inquiry into Allegations of Misconduct Against Juveniles Detained at and Committed at Cedar Knoll Institution,* D.C.App., 430 A.2d 1087, 1095 (1981) (Ferren, J., dissenting); *Campbell v. McGruder,* 188 U.S.App.D.C. 258, 277–78, 580 F.2d 521, 540–41 (1978).

5. *Accord* W. PROSSER, HANDBOOK OF THE LAW OF TORTS 583 (4th ed. 1971) (public nuisance is an "interference with the interests of the community, or the comfort or convenience of the general public").

■ In contrast, a "private nuisance" is a substantial and unreasonable interference with private use and enjoyment of one's land, RESTATEMENT, *supra* § 821D; W. PROSSER, *supra* at 591—for example, by interfering with the physical condition of the land, disturbing the comfort of its occupants, or threatening future injury or disturbance. W. PROSSER, *supra* at 591–93.[6] Historically, the origin of private nuisance liability "was purely tortious in character," not criminal; and the tort was developed, as needed, to protect use and enjoyment of land against nontrespassory interference. RESTATEMENT, *supra*, ch. 40 Introductory Note; *id.,* § 821D comment a.

■ While a private nuisance claim is thus inherently a private right of action, as a general proposition only governmental authorities or other representatives of the general public have standing to attack a public nuisance in court (absent statutory authorization). *Id.,* § 821C, comment a. There is, however, a traditional exception: a private party may sustain an action to enjoin or recover damages for a public nuisance if that party can allege and prove "special damage, distinct from that common to the public." *Holloway v. Bristol-Myers Corp.,* 327 F.Supp. 17, 24 (D.D.C.1971), *aff'd,* 158 U.S.App.D.C. 207, 385 F.2d 986 (1973); *see District of Columbia v. Totten,* 55 U.S. App.D.C. 312, 318, 5 F.2d 374, 380, *cert. denied,* 269 U.S. 562, 46 S.Ct. 21, 70 L.Ed. 412 (1925) ("Where the acts which create a public nuisance cause also private and special injury to an individual, an action at law will lie.") (citations omitted); *see generally* W. PROSSER, *supra* at 586–91.

■ Although a public nuisance, unlike a private nuisance, "does not necessarily involve interference with use and enjoyment of land," when it does so it "may also be a private nuisance, as when a bawdy house that interferes with the public morals and constitutes a crime also interferes with the use and enjoyment of land next door." RESTATEMENT, *supra* § 821B comment h. In such a situation, "the landowner may recover either on the basis of the particular harm to him resulting from the public nuisance or on the basis of the private nuisance." *Id.* It follows, as a general common law proposition, that when interference with private use and enjoyment of one's land is at issue, the nature and degree of "special damage" necessary to create a private right of action for a public nuisance will be the same as the nature and degree of injury required to sustain a claim for a private nuisance. *See* 1 F. HARPER & F. JAMES, THE LAW OF TORTS § 1.23, at 65 (1956) ("a public nuisance is not actionable by an individual unless and until it becomes, as to him, a private nuisance, *i.e.,* until he suffers some special and definite harm therefrom") (footnote omitted). In sum, as to interferences with land use, a private nuisance and special damage from a public nuisance are the same.

## II.

■ The question here thus becomes: has appellant stated a claim for private nuisance or—its equivalent in this context—a claim for special damage from a public nuisance?[7]

In its amended complaint, B & W alleged the following damages attributable to Tasea's unlawful parking lot: (1) damage to the unique "property right" in its "legal occupancy permit" to operate the only parking garage in the CR zone; (2) loss of business income due to increased competi-

---

6. *See Venuto v. Owens-Corning Fiberglas Corp.,* 22 Cal.App.3d 116, 124, 99 Cal.Rptr. 350, 355 (1971) (private nuisance is "based on disturbance of rights in land while a public nuisance is not dependent upon a disturbance of rights in land but upon an interference with the rights of the community"); *Turner v. Coppola,* 102 Misc.2d 1043, 1045, 424 N.Y.S.2d 864, 866 (Sup.Ct.1980) (private nuisance is "injury in relation to a right of ownership in ... land"). *See also Holloway v. Bristol-Myers Corp.,* 327 F.Supp. 17, 24 (D.D.C.1971), *aff'd,* 158 U.S. App.D.C. 207, 485 F.2d 986 (1973).

7. For the sake of argument we assume that Tasea's alleged zoning violation amounted to a public nuisance. A zoning violation does not constitute a "nuisance per se." *See Mandell v. Pasquaretto,* 76 Misc.2d 405, 408, 350 N.Y.S.2d 561, 566 (Sup.Ct.1973); *Padjen v. Shipley,* 553 P.2d 938, 939 (Utah 1976).

tion; (3) diminished rental value of its property for use as a parking garage due to increased competition; and (4) damage to "the aesthetics of the area surrounding [B & W's] property" from "increase[d] air pollution, motor vehicle traffic, urban blight, and visual unsightliness of surface parking lots."

■ Appellant's first three allegations essentially comprise a claim of injury from increased, unlawful business competition. B & W does not have a vested property right to a parking garage monopoly in the CR zone. *See Cord Meyer Development Co. v. Bell Bay Drugs, Inc.,* 20 N.Y.S.2d 211, 215–18, 229 N.E.2d 44, 46–47, 282 N.Y.S.2d 259, 262–64 (1967). Nor, in any event, is business competition the kind of interference with use and enjoyment of land contemplated at common law by private nuisance theory, *see* Part I *supra,* or by the special damage requirement under public nuisance theory.[8] *See Cord Meyer Development Co., supra* 282 N.Y.S.2d at 262–64 (in considering special damage claim in action to enjoin zoning violation, court distinguished a property interest from a business or competitive interest); *Skaggs-Albertson's Properties, Inc. v. Michels Belleair Bluffs Pharmacy, Inc.,* 332 So.2d 113, 116 (Fla.Dist.Ct.App.1976) (business competition does not constitute "special damages" required for standing to sue to enjoin zoning violation); *London v. Planning & Zoning Commission,* 149 Conn. 282, 284, 179 A.2d

614, 616 (1962) (injury to business competition does not give standing to challenge zoning enactment); *Swain v. County of Winnebago,* 111 Ill.App.2d 458, 467, 250 N.E.2d 439, 444 (1969) (same); *Bryniarski v. Montgomery County Board of Appeals,* 247 Md. 137, 145, 230 A.2d 289, 295 (1967) (same).[9]

■ Finally, B & W's claim for damage to "the aesthetics of the area" based on neighborhood "blight" does not amount to an assertion of the *substantial* interference with B & W's use and enjoyment of its land required to sustain a private nuisance action. *See Fugazzoto v. Brookwood One,* 295 Ala. 169, 171, 325 So.2d 161, 162 (1976); *Westgate Terrace Community Association, Inc. v. Burger King Corp.,* 66 Ill.App.3d 721, 728, 23 Ill.Dec. 328, 334, 383 N.E.2d 1355, 1361 (1978); *Adrouny v. International City Bank & Trust Co.,* 266 So.2d 524, 525 (La. App.), *cert. denied,* 263 La. 365, 268 So.2d 257 (1972). Nor is this an allegation of special damage attributable to a public nuisance. As the trial court stated, "[t]here is nothing alleged which suggests that [B & W's] claimed interest in such aesthetics is in any way different from that of other persons who own or occupy real property in that section of the city generally." *See Westgate Terrace,* 66 Ill.App.3d at 728, 23 Ill.Dec. at 334, 383 N.E.2d at 1361; *see Swain,* 111 Ill.App.2d at 463, 250 N.E.2d at 442 (challenge to validity of zoning ordinance).

**8.** A private plaintiff must assert "special damage" in order to enjoin a zoning violation. *See, e.g., Cord Meyer Dev. Co., supra.* This rule grew out of the "special damage" requirement in public nuisance actions. *See Skaggs-Albertson's v. ABC Liquors, Inc.,* 363 So.2d at 1087–88; *Renard v. Dade County,* 261 So.2d at 835. Thus, cases that provide analysis of the "special damages" in actions to enjoin zoning violations will be applicable as well to damage actions premised on the argument that zoning violations are public nuisances.

**9.** Courts have recognized, in another context, one general exception to the rule that business competition does not constitute special damage: an alcoholic beverage dealer suffers a special injury, and thus has standing to object, when a competitor violates a law regulating the business. *Skaggs-Albertson's v. ABC Liquors,*

*Inc.,* 363 So.2d at 1090; *see Rayan Corp., Inc. v. Board of County Commissioners of Dade County,* 356 So.2d 1276, 1277 (Fla.Dist.Ct.App. 1978); A. RATHKOPF, 3 LAW OF ZONING & PLANNING § 43.06, at 43–38 n. 8 (1982). This rule is based on the fact that, "if forced by competition to move, it would be extremely difficult [for a liquor dealer] to secure a license for a different location." *Id.* Courts have not extended the liquor-dealer rule to other contexts, however, let alone to damage actions, and we decline to do so here. *But cf. Thunderbird Motel, Inc. v. City of Portland,* 40 Or.App. 697, 702, 596 P.2d 994, 998 (1979) (where city's alleged violation of urban renewal plan resulted in what plaintiff motel owner characterized as a "subsidy" for new hotel, the "increased competition" gave motel owner standing to challenge city's contract with developer).

B & W accordingly has failed to state a claim on which relief could be granted, and the trial court properly dismissed the amended complaint.[10]

*Affirmed.*

---

10. As noted earlier, however, the statutory injunction action based on Tasea's alleged zoning violation is moot, and thus we intimate no opinion on the nature and degree of special damage required to sustain a private action for injunctive relief under D.C.Code 1973, § 5–422 (recodified as D.C.Code 1981, § 5–426.) *See* note 2 *supra; see generally* RESTATEMENT, *supra* § 821B comment i.