NORTHERN ILLINOIS HOME BUILDERS ASSOCIATION, INC., *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF DU PAGE *et al.*, Defendants-Appellees.

Second District   No. 2—92—0963

Opinion filed October 6, 1993.

McKenna, Storer, Rowe, White & Farrug, of Wheaton (John C. Bartler, of counsel), for appellants.

James E. Ryan, State's Attorney, of Wheaton, and Gerald P. Callahan, of Siemon, Larsen & Marsh, of Chicago (Barbara A. Preiner and Anna B. Harkins, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE QUETSCH delivered the opinion of the court:

This case of first impression in Illinois involves a constitutional challenge to impact fees imposed on new development in Du Page County for the purpose of collecting a proportionate share of the road improvement costs made necessary by the additional traffic generated by the new development.

The plaintiffs, Northern Illinois Home Builders Association, Inc., *et al.*, filed a complaint for *mandamus*, which in effect prayed for a declaratory judgment that the legislation enabling Du Page County to establish impact fees, and the ordinances passed pursuant thereto, be declared unconstitutional. Following a bench trial, the trial court denied the plaintiffs' complaint. The plaintiffs appeal, contending that the enabling legislation and ordinances are unconstitutional because they: (1) violate the takings clause of the fifth amendment; (2) impose taxes on real property in violation of section 4 of article IX of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §4); and (3) violate the right to travel, equal protection, and due process. The plaintiffs also argue that the enabling acts constitute special legislation.

The first act enabling Du Page County to establish an impact fee was former section 5—608(a) of the Illinois Highway Code. That act stated:

> "The county board of any county of over 400,000 population but less than 1,000,000 population may establish transportation impact districts and may collect transportation impact fees from persons constructing new developments in those districts, if such developments require direct or indirect access to the county highway system or State highway system. The fees shall be in addition to any amounts otherwise required to be paid by the developer and shall be collected at the time a building permit is issued or at such other time that the county board directs. The county board shall establish by ordinance or rule the amount of such fees, which shall be based on the amount of estimated traffic generated by various land uses and the amount of improvements needed to maintain a reasonable level of service on the existing and proposed highway systems in light of expected traffic growth." Ill. Rev. Stat. 1987, ch. 121, par. 5—608(a), repealed by Pub. Act 86—97, §2, eff. July 26, 1989.

Du Page County passed ordinance DTO—016—88 on or about November 22, 1988. That ordinance divided the county into 11 districts and used a standard fee formula which took into consideration the cost of road construction and the number of motor vehicle trips generated by different types of land use. The formula also provided credits for taxes and developer-financed improvement. The ordinance provided fee tables for residential, commercial and other types of developments, subject to annual review. The fees varied between districts, and the funds collected from new development could only be spent in that district or in areas immediately adjacent to that district.

After DTO—016—88 was passed, an error was discovered in the fee calculations. On June 27, 1989, Du Page County passed its second impact fee ordinance, ODT—021—89. That ordinance again divided the county into 11 districts and used the standard fee formula. It corrected the computational errors made in the first ordinance and provided a new set of impact fee tables. On July 25, 1989, Du Page County passed ODT—021A—89, which changed the fee tables to reflect increases in the gas tax.

On July 26, 1989, the legislature repealed the first enabling act and passed the Road Improvement Impact Fee Law. (605 ILCS 5/5—901 *et seq.* (West 1992).) This second enabling act authorized counties with a population of over 400,000 and all home rule municipalities to impose impact fees.

Du Page County subsequently passed ODT—021B—89, effective January 1, 1990, which amended the fee tables to reflect changes in the motor fuel and property tax credits. On May 22, 1990, the county passed its current impact fee ordinance, ODT—021C—89, effective July 25, 1990. The same formula was used to compute the impact fees for each of the 11 districts as was used to calculate the fees in the prior ordinances. It also provided that the funds collected from new development in a particular district could only be spent in that district. However, the county decided to no longer charge developers for their impact on State roads. Accordingly, the fee tables were recomputed. There are now three districts where no impact fees are due because there are fewer miles of county roads in those districts and the credits exceed the fees that would be owed.

The plaintiffs brought a complaint for *"mandamus,"* praying that the enabling statutes and ordinances be declared unconstitutional and that the impact fees previously paid be refunded. The trial court denied their complaint, and the plaintiffs appeal. Since the material facts pertinent to the constitutional issues are not disputed in this case, we may determine the correctness of the ruling on the question

of law independently of the trial court's judgment. *Midland Management Co. v. Helgason* (1993), 241 Ill. App. 3d 899, 903-04.

■ We first address the argument of plaintiff Joe Keim Builders, Inc. (Keim), that section 5—918 of the second enabling act requires Du Page County to refund $12,987 in impact fees which Keim paid from September 5, 1989, to March 10, 1990. Section 5—918 provides in relevant part:

"(a) Conformance of Existing Ordinances. A unit of local government which currently has in effect an impact fee ordinance or resolution shall have not more than 12 months from July 26, 1989 to bring its ordinance or resolution into conformance with the requirements imposed by this Act ***.

(b) Exemption of Developments Receiving Site Specific Development Approval. No development which has received site specific development approval from a unit of local government within 18 months before the first date of publication by the unit of local government of a notice of public hearing to consider land use assumptions relating to the development of a comprehensive road improvement plan and imposition of impact fees and which has filed for building permits or certificates of occupancy within 18 months of the date of approval of the site specific development plan shall be required to pay impact fees for permits or certificates of occupancy issued within that 18 month period.
***

(c) Exception to the Exemption of Developments Receiving Site Specific Development Approval. Nothing in this Section shall require the refund of impact fees previously collected by units of local government in accordance with their ordinances or resolutions, if such ordinances or resolutions were adopted prior to the effective date of this Act and provided that such impact fees are encumbered as provided in Section 5—916." 605 ILCS 5/5—918(a), (b), (c) (West 1992).

The parties agree that Keim received site-specific development approval for Wheaton Park Manor on April 17, 1989, which was within 18 months before the first date of publication by Du Page County of the notice of public hearing held to consider land-use assumptions relating to the development of a comprehensive road improvement plan and imposition of impact fees. Keim also filed for building permits within 18 months of the date of approval of the site-specific development plan. Therefore, Keim argues that pursuant to section 5—918(b) it is entitled to a refund of the impact fees it paid for the develop-

ment of Wheaton Park Manor. However, Du Page County argues that the exception to the exemption is applicable and that Keim is not entitled to a refund.

The fundamental principle of statutory construction is to ascertain and give effect to the intention of the legislature. (*Thomas v. Greer* (1991), 143 Ill. 2d 271, 278.) This intent is best determined by initially considering the language of the statute itself and giving the language its plain and ordinary meaning. *DeClerck v. Simpson* (1991), 143 Ill. 2d 489, 492.

A plain reading of section 5—918 indicates that the legislature intended that counties which did not have impact fee ordinances prior to the effective date of the second enabling statute should not thereafter collect impact fees from developments which meet the criteria of section 5—918(b). However, subject to an exception set forth in section 5—916 which is not applicable here, counties with impact fee ordinances existing prior to the time the second enabling statute became effective are not required to refund any impact fees previously collected pursuant to those ordinances.

In this case, Du Page County had enacted impact fee ordinances prior to the time the second enabling act became effective. However, Keim paid $12,987 in fees from September 5, 1989, to March 10, 1990. Keim argues that it is entitled to a refund of those monies since it paid them *after* the July 26, 1989, effective date of the second enabling act.

However, section 5—918(a) of the second enabling act preserved previously existing impact fee ordinances for one year from the effective date of the act. Thus, the legislature intended that counties with existing impact fee ordinances be allowed to continue collecting fees pursuant thereto until July 26, 1990. Therefore, Du Page County was still entitled to collect impact fees from Keim from September 5, 1989, to March 10, 1990. Thus, Keim is not entitled to the refund of those monies.

*Genuine Parts Co. v. Du Page County* (1992), 236 Ill. App. 3d 685, cited by Keim in support of its argument, is inapposite. There, Du Page County demanded that the plaintiff pay an impact fee of $13,933.36 three months after it had completed construction of a new building. The plaintiff refused to pay and sought an injunction to prohibit the collection of the fee. *Genuine Parts*, 236 Ill. App. 3d at 686.

The parties stipulated that the plaintiff met the exemption criteria of section 5—918(b). However, Du Page County contended that the exception to the exemption contained in section 5—918(c) was applicable. The county argued that the plaintiff received its building permit

prior to the effective date of the second enabling act. The plaintiff became liable for the fee at or prior to the time it obtained its building permit. Therefore, the fee should be considered to have been collected as of that time, and pursuant to section 5—918(c), the county was not required to "refund" the fee which was "previously collected." *Genuine Parts*, 236 Ill. App. 3d at 687-88.

The court rejected the county's argument and held that "the legislature intended the exception to apply only to the *actual* refunding of fees which had been previously collected." (Emphasis added.) (*Genuine Parts*, 236 Ill. App. 3d at 688.) The statute did not permit Du Page County to collect from the plaintiff the $13,933.36 in impact fees which had not previously been paid. (*Genuine Parts*, 236 Ill. App. 3d at 688.) In this case, however, the county *did* collect the impact fees from Keim pursuant to a valid impact fee ordinance which remained in effect under section 5—918(a). Thus, Keim is not entitled to a refund.

■ We next address the plaintiffs' argument that the enabling acts and ordinances violate the takings clause of the fifth amendment to the Constitution. The parties agree that in order for the impact fees to pass constitutional muster the need for road improvement impact fees must be "specifically and uniquely attributable" to the new development paying the fee. (*Pioneer Trust & Savings Bank v. Village of Mount Prospect* (1961), 22 Ill. 2d 375, 380.) In *Pioneer Trust*, the Village of Mount Prospect adopted an ordinance which provided that subdividers of real estate must dedicate for public use one acre of land for each 60 residential building sites. (*Pioneer Trust*, 22 Ill. 2d at 377.) The plaintiff, who was in the business of subdividing real estate for residential purposes, refused to dedicate land which the village intended to use as school grounds. (*Pioneer Trust*, 22 Ill. 2d at 378.) The plaintiff brought a *mandamus* proceeding to compel the village to approve its subdivision plat. *Pioneer Trust*, 22 Ill. 2d at 376.

The supreme court held that "if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power." (*Pioneer Trust*, 22 Ill. 2d at 380.) The court further held that the need for new school facilities was due to the total development of the community and that the plaintiff should not be required to pay the total cost of remedying the school problem. (*Pioneer Trust*, 22 Ill. 2d at 381.) The ordinance therefore imposed an unreasonable condition

precedent for the approval of a subdivision plat. *Pioneer Trust*, 22 Ill. 2d at 382.

In the present case, the second enabling act mandates that the "construction, improvement, expansion or enlargement of new or existing roads, streets, or highways for which an impact fee is imposed must be *specifically and uniquely attributable* to the traffic demands generated by the new development paying the fee." (Emphasis added.) 605 ILCS 5/5—906(a)(1) (West 1992).

The second enabling act defines "[s]pecifically and uniquely attributable" to mean:

> "a new development creates the need, or an identifiable portion of the need, for additional capacity to be provided by a road improvement. Each new development paying impact fees used to fund a road improvement must receive a direct and material benefit from the road improvement constructed with the impact fees paid. The need for road improvements funded by impact fees shall be based upon generally accepted traffic engineering practices assignable to the new development paying the fees." 605 ILCS 5/5—903 (West 1992).

Thus, in order for Du Page County to comply with the "specifically and uniquely attributable" test, it can only impose impact fees for the road improvements made necessary by the additional traffic generated by *new* development. Further, the new development paying the impact fee must receive a *direct* and *material* benefit from the improvement financed by the impact fee.

We hold that Du Page County's impact fee program complies with both requirements. The formula used by the county imposes fees only on the road improvement costs generated by *new* development. In order to quantify the amount of travel generated by new development and the costs of road improvement, the county used data from several different sources. To determine roadway construction costs, Du Page used county records and a study of county land values. To measure the traffic generated by different types of development, the county used the Chicago Area Transit (CATS) model, which mathematically traces cars as they leave particular developments and enter on the roads. The county also used trip-generation data collected by the Institute for Transportation Engineering.

Furthermore, Du Page County developed its own computer model which gave it the ability to model future travel based on new development. The county did travel surveys which allowed it to determine which road segments were deficient due to existing development. Impact fee funds are not spent on those roads. James Nicholas,

a professor at the University of Florida who surveyed 238 impact fee programs around the country, testified that the data collected by Du Page County was "overwhelming" and demonstrated a level of effort that he had never before seen.

The plaintiffs contend that the data collected by the county is deficient because its studies only analyzed the effects of generic housing units on traffic within an impact fee district, and did not take into account factors such as the size of the house or the number of automobiles per house. However, Harold Crane, who oversaw the development of the county's computer model, testified that such data is not relevant in determining trip generation rates. We hold that the data gathered by Du Page County ensures that it imposes impact fees only for the improvements made necessary by new development.

We also hold that the new developments receive direct and material benefit from the road improvements financed by their impact fees. Du Page County divided itself into 11 districts based on the following criteria: location of existing and proposed municipal boundaries; locations of major developable parcels of land; existing major retail/employment centers; location of potential transportation corridors; CATS one-quarter-section-based zone system; and the existing county highway system. The funds collected from new development in a particular district are used to finance improvements in that same district. Testimony at trial established that fee payers in a district *do* benefit from the decrease in congestion resulting from the improvements made in that district.

The plaintiffs argue that new developments do not receive direct and material benefit from the road improvements financed by impact fees since, according to the way the districts are drawn, the fees collected in one town can be spent in multiple other towns. However, there is no requirement that the improvements financed by impact fees must be used *exclusively* or *overwhelmingly* by the development paying the fee. See 605 ILCS 5/5—906(c) (West 1992) ("An impact fee shall not be deemed invalid because payment of the fee may result in a benefit to other owners or developers within the service area or areas, other than the person paying the fee").

The road improvements for which Du Page County imposes its impact fees are specifically and uniquely attributable to the traffic demands generated by the new development paying the fees. The fees imposed on new development are therefore not a confiscation of private property in violation of the fifth amendment, but are instead a reasonable regulation under the police power. *Pioneer Trust*, 22 Ill. 2d at 380.

■ The plaintiffs next argue that the Du Page County ordinances do not comply with the second enabling act because the ordinances use averages in their fee formula to predetermine fees for various types of developments. The plaintiffs contend that the second enabling act requires an individually tailored fee calculation for each new development.

However, in its definition of "[s]pecifically and uniquely attributable," the second enabling act states that the "need for road improvements funded by impact fees shall be based upon *generally accepted traffic engineering practices* as assignable to the new development paying the fees." (Emphasis added.) (605 ILCS 5/5—903 (West 1992).) Professor Nicholas testified that the fee calculation method complies with generally accepted traffic engineering practices and that approximately 80% of road impact fees use the same formula. Jan Bruckner, a professor of economics at the University of Illinois, testified that most impact fee ordinances of which he was aware used averages to predetermine impact fees. Du Page County's use of its fee formula complies with the requirements of the second enabling act.

■ The plaintiffs next argue that the impact fees are real property taxes which bear no relation to the value of the property taxed. Therefore, the ordinances violate section 4(a) of article IX of the Illinois Constitution of 1970, which states that "[e]xcept as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." (Ill. Const. 1970, art. IX, §4(a).) Du Page County responds that its ordinances provide for regulatory fees, not taxes.

The court in *Home Builders & Contractors Association of Palm Beach County, Inc. v. Board of County Commissioners* (Fla. Dist. Ct. App. 1983), 446 So. 2d 140, decided that a similar impact fee ordinance constituted a regulation, not a tax. We find their reasoning to be persuasive. The *Home Builders* court first determined that the ordinance was meant to help pay for the cost of road construction necessitated by new development. (*Home Builders*, 446 So. 2d at 145.) The court determined that the cost of construction of additional roads would exceed the revenue produced by the impact fees. (*Home Builders*, 446 So. 2d at 145.) It noted that the formula for calculating the fee was not inflexible, but allowed the person improving the land to furnish his own data to demonstrate that his share is less than the amount under the formula. (*Home Builders*, 446 So. 2d at 145.) Lastly, expenditure of the funds collected was localized by virtue of their zone (district) system. *Home Builders*, 446 So. 2d at 145.

The Du Page County impact fee ordinances are also meant to help pay for the cost of road improvements made necessary by new development. Trial testimony established that the impact fees understate the costs of road improvement and are in fact substantially below the national average. The person improving the land is allowed to furnish his own data to demonstrate that his fair share of road improvement is less than the amount under the formula. Finally, expenditure of the funds is localized by virtue of the district system. We hold that the impact fee ordinances impose a regulatory fee on new development and not a tax.

■ The plaintiffs next contend that the impact fees violate the uniformity clause of the Illinois Constitution of 1970. (Ill. Const. 1970, art. IX, §2.) The uniformity clause provides that "[i]n any law classifying the subjects or objects of non-property taxes *or fees*, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." (Emphasis added.) Ill. Const. 1970, art. IX, §2.

The plaintiffs argue that the county has acted arbitrarily by imposing impact fees only on new development, since the roads financed by the fees benefit the public as a whole. The plaintiffs are again arguing that the improvements financed by impact fees must be used exclusively by the development paying the fee. However, the uniformity clause does not require that those persons who pay the fees receive the sole benefit therefrom. Rather, the clause requires that the classification of a fee must be based on a real and substantial difference between those persons assessed a fee and those who are not and must bear a reasonable relationship to a legislative purpose. *Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 468.

As discussed above, the county has gathered extensive data quantifying the amount of traffic generated by new development as opposed to existing development. It has also gathered data on the road improvement costs made necessary by the additional traffic generated by the new development. Impact fees are only imposed on new developments in order that they pay their proportionate share of the road improvement costs necessitated by the additional traffic which they generate. Thus, there is a real and substantial difference between those new developments which generate the additional traffic, and the existing developments which do not.

The plaintiffs contend that the impact fees violate the uniformity clause because they differ among the 11 districts. However, each district has different road improvement costs made necessary by the additional traffic generated by new development. The districts were not

created arbitrarily, but were based primarily on the location of existing and proposed municipal boundaries, the existing county highway system, and the CATS one-quarter-section-based zone system. Thus, the different impact fees reflect the real and significant differences among the districts.

The plaintiffs argue that the impact fees are not uniformly imposed because there are currently three districts where no impact fees are due. However, the same fee formula is used among all of the districts. That formula provides credits for motor fuel and property taxes and travel on noncounty roads. In the three "zero-fee" districts, the credits exceed the fee that would be due. Unlike new developments in the other districts, the new developments in the "zero-fee" districts generate enough money to cover the costs of road improvements.

We hold that the classifications created by Du Page County are based on real and substantial differences between the persons assessed a fee and those who are not. Further, they bear a reasonable relationship to the legislative purpose of assuring that new development bears its fair share of the cost of meeting the demand for road improvements. Therefore, the impact fees imposed by Du Page County do not violate the uniformity clause.

■ We next address the plaintiffs' argument that the enabling acts and ordinances violate the right of intrastate travel. The right to travel analysis is a particular application of equal protection analysis. (*Zobel v. Williams* (1982), 457 U.S. 55, 72 L. Ed. 2d 672, 102 S. Ct. 2309.) The plaintiffs contend that the right of intrastate travel is a fundamental right and therefore strict scrutiny is required. However, although the Supreme Court had declared that the right of interstate travel is a fundamental right (*Shapiro v. Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322), it has not addressed the question whether the right of intrastate travel is also fundamental. See *Memorial Hospital v. Maricopa County* (1974), 415 U.S. 250, 39 L. Ed. 2d 306, 94 S. Ct. 1076.

Further, a law implicates the right to travel only when it actually deters such travel, when impeding travel is its primary objective, or when it "penalizes" the exercise of that right. (*Attorney General v. Soto-Lopez* (1986), 476 U.S. 898, 90 L. Ed. 2d 899, 106 S. Ct. 2317.) The plaintiffs argue that the county's impact fees penalize the right to travel. However, the Supreme Court has found that a law penalizes the right to travel only when it denies new residents "the same right to vital government benefits and privileges" (*Memorial Hospital*, 415 U.S. at 261, 39 L. Ed. 2d at 317, 94 S. Ct. at 1084) as are enjoyed by

other residents. See *Shapiro*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (durational residency requirement for welfare assistance penalized right to travel); *Memorial Hospital*, 415 U.S. 250, 39 L. Ed. 2d 306, 94 S. Ct. 1076 (durational residency requirement for free medical care penalized the right to travel).

We do not believe that the impact fee program established by Du Page County denies new residents of the county any vital government benefits and privileges that are enjoyed by other residents. We therefore decline to apply strict scrutiny analysis to the plaintiffs' equal protection claim. Since no fundamental rights or suspect classifications are involved, there need only be a rational basis for distinguishing the class to which the law applies from the class to which the law is inapplicable. (*People v. Blackorby* (1992), 146 Ill. 2d 307, 318.) We have already determined that there is a real and substantial difference between those persons who pay the impact fees and those who do not. The county's impact fee program therefore complies with the requirements of the equal protection clause. See *Geja's Cafe v. Metropolitan Pier & Exposition Authority* (1992), 153 Ill. 2d 239, 247 (constitutionality under the uniformity clause inherently fulfills the requirements of the equal protection clause).

■ We next address the plaintiffs' argument that both enabling acts violate the constitutional prohibition against special legislation. That provision states: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, §13.

A legislative classification based upon population is valid if there is a rational difference of situation or condition existing in the persons or objects upon which the classification rests and there is a reasonable basis for the classification in view of the purposes to be accomplished. (*In re Belmont Fire Protection District* (1986), 111 Ill. 2d 373, 380.) The burden of establishing the arbitrariness of a classification lies with the person attacking its validity. (*Belmont*, 111 Ill. 2d at 380.) All reasonable doubts must be resolved in favor of upholding the legislation. *Belmont*, 111 Ill. 2d at 380.

The plaintiffs argue that the first enabling act constitutes special legislation because it enables only counties with populations between 400,000 and 1 million (Lake and Du Page Counties) to implement impact fee ordinances. The plaintiffs contend that there is no reason why counties with populations less than 400,000 should not have the power to impose impact fees. In support of this argument, they cite the trial testimony of civil engineers Karl Fry and Richard Hocking

that counties with less than 400,000 people have competent highway departments and are technically able to implement impact fee programs.

However, Karl Fry also testified that counties with populations greater than 400,000 have higher levels of traffic congestion than other counties. Richard Hocking testified as to the high level of traffic congestion in Du Page County and stated that the statutory distinction between counties was based on a rational difference of situations between the counties. Lane Kendig, who is a city and regional planner, testified that counties with more than 400,000 people had the highest numbers of persons per mile of road, the most road miles per square mile, the highest average daily vehicle miles per road mile, the highest average daily vehicle miles per square mile, and the highest population density per square mile.

Thus, since counties with more than 400,000 persons suffer worse traffic congestion than counties with fewer than 400,000 persons, there is a rational difference of condition upon which the population classification rests. There is also a reasonable basis for the classification in view of the legislative purpose of alleviating traffic congestion through a new method of financing road improvements.

The plaintiffs next argue that the first enabling act constituted special legislation because it did not authorize counties with over 1 million persons to implement impact fees. The plaintiffs cite Kendig's testimony that Cook County, with a population of over 5 million persons, had the greatest population density per square mile, the most average daily vehicle miles per square mile, the most average daily vehicle miles per road mile, and more road miles per square mile than any other county.

However, Kendig also testified that Cook County's population decreased from 1980 to 1990, whereas Du Page and Lake Counties had "very significant" population increases. Thus, the legislature could have reasonably determined that Du Page and Lake Counties had a more immediate need for new road construction than Cook County. The plaintiffs have not met their burden of establishing the arbitrariness of the classification. We hold that the first enabling act did not constitute special legislation.

The plaintiffs next argue that the second enabling act violates the constitutional prohibition against special legislation because it allows home rule units, as well as counties with populations over 400,000, to implement impact fees. The plaintiffs contend that many home rule units have small populations and little traffic congestion. Hence, for purposes of implementing an impact fee program, there is no rational

difference of situation between home rule units and counties with fewer than 400,000 persons.

However, the second enabling act created no powers for home rule units which they did not already possess by virtue of the constitution. Section 6 of article VII of the Illinois Constitution provides the authority for home rule units to exercise any power and perform any function pertaining to the government and affairs of the unit. (Ill. Const. 1970, art. VII, §6.) Thus, home rule units had the power under the Illinois Constitution to implement impact fees prior to the passage of the second enabling act. The second enabling act is not made special or local by merely incorporating home rule units within its scope.

■ We next address the plaintiffs' argument that the appeals section provided in the ordinances violates procedural due process because it is too costly and time-consuming. The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner. (*People v. P.H.* (1991), 145 Ill. 2d 209, 235.) Due process is a flexible concept which calls for such procedural protections as a particular situation demands. *Atwood v. Warner Electric Brake & Clutch Co.* (1992), 239 Ill. App. 3d 81, 89.

The ordinances provide two different appeals sections. The first, entitled "Interpretation of Ordinance and Fee Schedule and Appeals," provides that interpretations of the provisions of the ordinance shall be made by the superintendent of highways of Du Page County. Any decision by the superintendent may be appealed to the division of transportation committee. The decision of the committee may be appealed to the county board.

A developer uses this appeals process when he wants to challenge the county's classification of his proposed development. For example, the county might classify a proposed development as an office land use. The developer can attempt to demonstrate that his proposed development is in fact a residential land use and, thus, entitled to a smaller fee. If the developer is successful, the county would adjust his fee accordingly.

The other appeals section, entitled "Individual Assessment of Impact," allows a developer to provide an individual assessment of the impact of his proposed development upon the transportation system in the county. The individual assessment must be calculated according to the fee formula used by the county in developing its fee tables. The individual assessment must use trip-generation data collected from local empirical surveys, and it must be prepared by "professionals, qualified by the County in accordance with established procedures, in the field of transportation planning and engineering and impact analysis."

(Du Page County, Ill., Ordinance ODT—021C—89 §12(3) (July 25, 1990).) The Superintendent must approve the proposed fee if he determines that "the traffic information, traffic factors, and methodology used to determine the proposed impact fee are professionally acceptable and fairly assess the costs for capital improvements to the road, street and highway systems in the County." Du Page County, Ill., Ordinance ODT—021C—89 §12(5) (July 25, 1990).

The plaintiffs argue that the county is allowed to use averages when developing its fee tables, whereas the developers who make an individual assessment are required to provide empirical data specifically relating to the proposed development. The plaintiffs contend that the collection of such empirical data is so difficult and time-consuming as to preclude any meaningful appeals.

In support of their argument, the plaintiffs cite the testimony of Harold Crane, who obtained empirical data about trip-generation rates while he was developing the computer model used by Du Page County. Crane testified that it took months to obtain useful data. However, Crane was collecting data in order to develop trip-generation rates for developments all over the county. In contrast, a developer providing an individual assessment is only collecting trip-generation rates for his proposed development. The plaintiffs have not established that the collection of such data is so difficult and time-consuming as to preclude any meaningful appeals.

■ The plaintiffs next argue that the current impact fee ordinance violates due process by imposing a 15% penalty for appealing the imposition of impact fees. The ordinance provides that "in order to encourage the use of the above fee schedule, if an applicant chooses to pay any applicable fee in accordance with such schedule, the fee which would otherwise be due and owing shall be discounted by 15%. Developers who choose to conduct an Individual Assessment *** shall forfeit the 15% discount." Du Page County, Ill., Ordinance ODT—021C—89 §11(2).

This court has defined the word "penalty" to include fines, forfeitures and other forms of punishment. (*Wilkes v. Deerfield-Bannockburn Fire Protection District* (1979), 80 Ill. App. 3d 327, 329-30.) Black's Law Dictionary also defines "penalty" as the "idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally conferred to pecuniary punishment." (Black's Law Dictionary 1020 (5th ed. 1979).) The forfeiture of the 15% discount confers a pecuniary punishment, or penalty, upon those developers who choose to appeal the fees imposed according to the fee schedule. The imposition of a penalty for having pursued a right to appeal is a

violation of due process of law. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.) Although *Pearce* involved the rights of a criminal defendant to pursue a constitutional or statutory right of appeal without penalty, we believe that an appellant in a civil case has the same right. Accordingly, we hold that the provision in section 11(2) of ordinance ODT—021C—89, which states that developers who choose to conduct an individual assessment shall forfeit the 15% discount, is unconstitutional.

Having determined that the forfeiture provision violates due process, we must consider whether it is severable from the rest of the ordinance. " 'Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.' " *Buckley v. Valeo* (1976), 424 U.S. 1, 108-09, 46 L. Ed. 2d 659, 739, 96 S. Ct. 612, 677, quoting *Champlin Refining Co. v. Corporation Comm'n* (1932), 286 U.S. 210, 234, 76 L. Ed. 1062, 1078, 52 S. Ct. 559, 565.

The ordinance contains a statement that its provisions are severable. Further, the forfeiture provision may be severed without doing violence to the rest of the ordinance. The ordinance is still operative and it still serves the legislature's intent of ensuring that new developments pay their fair share of road improvements. Since the legislative purpose is not defeated by the invalidation of the forfeiture provision, we may leave the remainder of the ordinance in force.

The plaintiffs have not proven that Du Page County actually penalized them for taking an appeal. Therefore, our decision to invalidate the forfeiture provision in ordinance ODT—021C—89 does not require that any monies be refunded to them.

For the foregoing reasons, we hold that: (1) Joe Keim Builders, Inc., is not entitled to a refund of the $12,987 it paid in impact fees from September 5, 1989, to March 10, 1990; (2) both enabling acts are constitutional; (3) the penalty provision in section 11(2) of ordinance ODT—021C—89, which states that developers who choose to conduct an individual assessment shall forfeit the 15% discount, violates due process but is severable from the remainder of the ordinance; and (4) the plaintiffs are not entitled to the return of the monies paid pursuant to the enabling acts and impact fee ordinances.

Affirmed in part; reversed in part.

BOWMAN and COLWELL, JJ., concur.