EDWARD TERRY *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. METROPOLITAN PIER AND EXPOSITION AUTHORITY, Defendant-Appellee.

First District (4th Division)   No. 1—93—2881

Opinion filed March 31, 1995.

Anthony B. Bass, Aron D. Robinson, Robert S. Kipnis, and Gina R. Fietsam, all of Holstein, Mack & Klein, of Chicago, for appellants.

Roger Kiley, Hugh R. McCombs, Michele Odorizzi, and Phillip S. Reed, all of Mayer, Brown & Platt, and Peggy A. Davis, of Metropolitan Pier and Exposition Authority, both of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

The plaintiffs appeal the circuit court's order dismissing their class action complaint challenging the constitutionality of the Airport Departure Tax Ordinance (Departure Tax) imposed by the Metropolitan Pier and Exposition Authority (MPEA), and the statute which authorizes the ordinance. (70 ILCS 210/13(f) (West 1992); Metropolitan Pier and Exposition Authority Airport Departure Tax Ordinance § 1—3 (1992) (hereinafter Ordinance).) The action was brought on behalf of two classes. The first class consists of all operators of vehicles who are taxed under the ordinance, and the second includes the passengers who reimburse them. On appeal, the plaintiffs contend that because of procedural errors below, and because the Departure Tax violates the United States and Illinois Constitutions, a reversal and remand are warranted. We find that the plaintiffs' procedural challenges are without merit and hold that the tax is constitutional. Therefore, we affirm.

## BACKGROUND

In 1992, the General Assembly enacted Public Act 87—733, amending the Metropolitan Pier and Exposition Authority Act (Act) (Pub. Act 87—733, eff. July 1, 1992). The Act authorizes the construction of a new McCormick Plaza Exhibition Hall, the renovation of existing McCormick Place facilities and the construction of related infrastructure projects (the Expansion Project). (*Geja's Cafe v. Metropolitan Pier & Exposition Authority* (1992), 153 Ill. 2d 239, 606 N.E.2d 1212.) The Act anticipates that the Expansion Project will be funded by bonds issued by the MPEA, which are to be repaid from the proceeds of a number of local taxes in addition to the Departure Tax at issue here. These taxes include a 2.5% hotel tax within Chicago, a 6% tax on rental cars within the metropolitan area, and a 1% tax on certain Chicago area restaurants which will be likely to benefit from the expansion because of increased business. (See 70 ILCS 210/13 (West 1992).) The Illinois Supreme Court has upheld the constitutionality of the restaurant tax. *Geja's*, 153 Ill. 2d 239, 606 N.E.2d 1212.

The portion of the Act concerning the Departure Tax provides in pertinent part:

"By ordinance, the Authority shall *** impose an occupation tax on all persons, other than a governmental agency, engaged in the business of providing ground transportation for hire to passengers in the metropolitan area at a rate of (i) $2 per taxi or livery vehicle departure with passengers for hire from commercial service airports in the metropolitan area, (ii) for each departure with passengers for hire from a commercial service airport in the metropolitan area in a bus or van operated by a person other than a person described in item (iii): $9 per bus or van with a capacity of 1-12 passengers, $18 per bus or van with a capacity of 13-24 passengers, and $27 per bus or van with a capacity of over 24 passengers, and (iii) for each departure with passengers for hire from a commercial service airport in the metropolitan area in a bus or van operated by a person regulated by the Interstate Commerce Commission or Illinois Commerce Commission, operating scheduled service from the airport, and charging fares on a per passenger basis: $1 per passenger for hire in each bus or van." 70 ILCS 210/13(f) (West 1992).

Pursuant to the authority granted by the statute, the MPEA approved the Departure Tax ordinance. The ordinance requires each taxi or other commercial vehicle to purchase tax stamps in sets of 10 for $20. Prior to departing from an airport with a fare-paying passenger, each vehicle operator who falls under the umbrella of the ordinance must tender one stamp to an MPEA collecting agent.

The ordinance also prescribes a variety of ways in which operators may choose to pass the burden of the tax along to their passengers, which we will refer to as the "burden-passing provision." For example, taxi drivers may impose a $1 charge for each trip to or from O'Hare International Airport or Midway Airport. (Ordinance § 1—5(i).) The operators must pay the tax regardless of whether they elect to charge passengers for reimbursement. Ordinance § 1—3.

The plaintiffs initiated the present class action maintaining that the Departure Tax should be declared unconstitutional as to both operators and passengers because it violates the equal protection and due process clauses of the Illinois and United States Constitutions (counts I and II) and the commerce clause of the United States Constitution (counts III and IV). (U.S. Const., amends. XIV, V, art. I, § 8.) Counts V and VI challenge the tax under the uniformity clause of the Illinois Constitution. Ill. Const. 1970, art. IX, § 2.

The defendant then filed a motion to dismiss the complaint in its entirety under section 2—615 of the Illinois Code of Civil Procedure. (735 ILCS 5/2—615 (West 1992).) The circuit court dismissed all counts of the complaint with prejudice and denied the plaintiffs' motion to reconsider. Likewise, the court denied the plaintiffs' motion for leave to file a third amended complaint. The plaintiffs now appeal

the issues of whether the defendant employed the wrong procedural device to dispose of this action and whether the statute authorizing the tax and the ordinance imposed by the MPEA violate the United States and Illinois Constitutions.

## DISCUSSION

### I. The Motion to Dismiss under Section 2—615

The plaintiffs argue that the defendant should have answered the complaint and filed a motion for judgment on the pleadings under section 2—615(e), rather than a motion to dismiss under section 2—615(a). They also challenge the form of the defendant's motion, claiming that the MPEA failed to specifically identify the deficiencies in the complaint as required by section 2—615(b).

■ A motion to dismiss under section 2—615 may be used to dispose of a case if the facts alleged do not state a claim upon which relief can be granted as a matter of law. (*MBL (USA) Corp. v. Diekman* (1985), 137 Ill. App. 3d 238, 241, 484 N.E.2d 371, 374.) "The requirement that all objections to a pleading be made by a ¶ 2—615 motion implies that the defect complained of may be one of form or one of substance ***." 3 R. Michael, Illinois Practice § 27.2, at 489 (1989).

First, the defendant's motion attacked the sufficiency of the allegations, specifically identifying the plaintiffs' pleading deficiencies, such as their failure to identify similarly situated individuals that are treated differently under the tax. The defendant also attacked the legal sufficiency of the complaint, arguing that the tax is constitutional as a matter of law.

Upon reviewing both the plaintiffs' complaint and the defendant's motion, we find that a motion to dismiss under section 2—615 was an appropriate vehicle for disposing of this action. (See *Committee for Educational Rights v. Edgar* (1994), 267 Ill. App. 3d 18, 641 N.E.2d 602 (affirming the trial court's order dismissing a complaint pursuant to section 2—615 because it did not state a claim for violation of equal protection or violation of the education article).) Therefore, we conclude that the plaintiffs' arguments concerning alleged pretrial procedural errors are without merit.

### II. The Passengers

■ Counts II, IV and VI of the plaintiffs' complaint contain allegations concerning the passengers who reimburse the vehicle operators required to pay the tax. The circuit court found that the passengers' claims failed because the Departure Tax is imposed solely on the operators, not the passengers.

On appeal, the plaintiffs contend that they are not limited to attacking the Departure Tax in terms of whether it infringes on the rights of the operators. They argue that the so-called burden-passing provision of the ordinance creates two classes of passengers which are repugnant to the United States and Illinois Constitutions under principles of equal protection, due process, the commerce clause and the uniformity clause. They also maintain that the court should have looked beyond facial declaration of the ordinance and considered its practical operation and effect. However, we conclude that the plaintiffs' analysis of the tax and the alleged burden-passing provision is flawed, and their claims necessarily fail.

The parties do not dispute, and we agree, that the passengers have standing to sue the MPEA because they incur at least a portion of the economic burden of the occupation tax. (See *Commonwealth Edison Co. v. Community Unit School District No. 200* (1976), 44 Ill. App. 3d 665, 358 N.E.2d 688.) In *Commonwealth Edison*, the court held that an occupation tax which was levied on utilities could not be challenged by a school district on the theory that it was an unconstitutional tax on State funds. The court reasoned that although the school district ultimately incurred the cost of the tax which was passed on to it by the utility, the school district was not the actual taxpayer. Therefore, the school district could attack the validity of the tax as it applied to the utility, but not as it affected the school district. A similar situation exists in the present case.

The ordinance provides in part: "There is hereby imposed an occupation tax on all persons, other than a governmental agency, engaged in the business of providing ground transportation to passengers for hire at the following rates." (Ordinance § 1—3.) The ordinance further provides: "The ultimate incidence and liability for paying the tax shall be borne by the operator as defined in this ordinance." Ordinance § 1—3.

Here, it is clear that the incidence of the tax rests on the operators, even if its burden does not, because the tax is paid by the operators. (*Commonwealth Edison*, 44 Ill. App. 3d 665, 358 N.E.2d 688; see also *Agron v. Illinois Bell Telephone Co.* (7th Cir. 1971), 449 F.2d 906.) The MPEA will only seek to collect the tax from the operators. See Ordinance § 1—3.

Accordingly, the operators, not the passengers, are the taxpayers in this scenario. The character of the tax remains a tax on operators, despite the fact that the operators may elect to pass on all or a portion of the tax to their passengers. *Commonwealth Edison*, 44 Ill. App. 3d at 671, 358 N.E.2d at 692.

Just as businesses may pass on and recover other operating expenses, including State and Federal taxes, in order to obtain a profit, so may the operators here pass along the cost of the Departure Tax. (See *Agron*, 449 F.2d at 909.) As such, the plaintiffs may properly challenge the Departure Tax as it applies to vehicle operators, but not as it affects the passengers. See *Commonwealth Edison*, 44 Ill. App. 3d 665, 358 N.E.2d 688.

Finally, the plaintiffs' reliance on the United States Supreme Court opinion in *Crandall v. State of Nevada* (1867), 73 U.S. (6 Wall.) 35, 18 L. Ed. 744, is misplaced. In *Crandall*, the statute specifically imposed a $1 head tax on each passenger who left the State, which was to be collected by the railroad or vehicle operator. Here, the operators are not required to collect the tax from a passenger. Also, the amount of the tax may vary significantly in the present case. For example, the tax imposed on persons electing to travel to the city via a taxicab may pay more or less depending on whether the ride is shared with others. Therefore, we conclude that the circuit court properly found that the complaint failed to state a cause of action upon which relief could be granted as to the passengers.

III. The Uniformity Clause

■ Next, we turn to the issue of whether the Departure Tax imposed on vehicle operators is constitutionally permissible. We will address the plaintiffs' due process, equal protection and uniformity clause allegations together because they raise essentially the same issue. Not only does the uniformity clause of the Illinois Constitution encompass the equal protection clause, but it places even more limitations on the government. (*Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 466-68, 512 N.E.2d 1240, 1246; see generally *Di Santo v. City of Warrenville* (1978), 59 Ill. App. 3d 931, 939, 376 N.E.2d 288, 294 (equal protection analysis under the Illinois and United States Constitutions is the same).) Therefore, "[i]f a tax is constitutional under the uniformity clause, it inherently fulfills the requirements of the equal protection clause." *Geja's*, 153 Ill. 2d at 247, 606 N.E.2d at 1215.

Additionally, a substantive due process challenge to economic or commercial legislation is analyzed according to the same test as that employed for an equal protection claim. (See *Allright Colorado, Inc. v. City & County of Denver* (10th Cir. 1991), 937 F.2d 1502, 1511; *Kaltsas v. City of North Chicago* (1987), 160 Ill. App. 3d 302, 513 N.E.2d 438.) Consequently, our discussion will focus on the constitutionality of the tax under the uniformity clause.

■ The uniformity clause provides:

"In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowance shall be reasonable." (Ill. Const. 1970, art. IX, § 2.)

The classification of a nonproperty tax must be based on a real and substantial difference between those taxed and those not taxed, and must bear some reasonable relationship to the object of the legislation or to public policy. *Searle*, 117 Ill. 2d 454, 512 N.E.2d 1240.

Although the complaint fails to identify the group of similarly situated individuals who are not taxed, on appeal the plaintiffs submit that among all operators of vehicles for hire in Chicago, those who take fares from O'Hare and Midway airports are improperly singled out and taxed as a subclass to assist in financing the Expansion Project. In essence, the plaintiffs maintain that the tax is unconstitutional because it does not reach vehicle operators and passengers who depart from McCormick Place. The plaintiffs do not dispute that all operators of vehicles for hire in Chicago are likely to benefit from the Expansion Project.

■ There is a strong presumption that a State's statutory taxing scheme is constitutional. This presumption may be overcome only by a clear showing that it is arbitrary and establishes an unreasonable classification. (*Geja's*, 153 Ill. 2d at 248, 606 N.E.2d at 1216; *Terra-Nova Investments v. Rosewell* (1992), 235 Ill. App. 3d 330, 601 N.E.2d 1109.) Generally, the legislature is afforded wide latitude in constructing legislative classifications. (*Geja's*, 153 Ill. 2d at 248, 606 N.E.2d at 1216.) If a set of facts can be reasonably conceived that would sustain the classification, the tax must be upheld. *Geja's*, 153 Ill. 2d at 248, 606 N.E.2d at 1216.

■ A plaintiff challenging a tax classification has the burden of showing that it is arbitrary or unreasonable. (*Geja's*, 153 Ill. 2d at 248, 606 N.E.2d at 1216; *Illinois Gasoline Dealers Association v. City of Chicago* (1988), 119 Ill. 2d 391, 403, 519 N.E.2d 447, 452.) The burden is fulfilled if the plaintiff comes forward with a good-faith uniformity challenge. *Geja's*, 153 Ill. 2d at 248, 606 N.E.2d at 1216.

"[T]he court is not required to have proof of perfect rationality as to each and every taxpayer. The uniformity clause was not designed as a straitjacket for the General Assembly. Rather, the uniformity clause was designed to enforce minimum standards of reasonableness and fairness as between groups of taxpayers." (*Geja's*, 153 Ill. 2d at 252, 606 N.E.2d at 1218.)

In *Geja's*, the Illinois Supreme Court held that the 1% retailers' occupation tax on restaurants, which was designed to fund the Expan-

sion Project in part, did not violate the uniformity clause. The court determined that the General Assembly could tax restaurants located in the area that conventioneers were likely to patronize. The court found that restaurants within a certain taxing district in the Chicago metropolitan area, as a group, could be taxed because they were likely to benefit from the expansion.

■ First, the plaintiffs' complaint contains no allegation that the vehicle operators who are taxed do not benefit directly from the Expansion Project. Second, and more importantly, nowhere do the plaintiffs allege that there is a class of vehicle operators whose only business consists of taking passengers from one of the metropolitan airports. Therefore, the plaintiffs have failed to establish a distinction between classes of operators who are taxed and those who are not. In other words, the plaintiffs fail to meet their initial burden of coming forward with a good-faith uniformity challenge to the Departure Tax because they have not shown that vehicle operators may be divided into two separate classes.

Even if we were to accept the plaintiffs' bare assertion on appeal that there are two classes of operators, their claim fails nonetheless. The plaintiffs' argument primarily concerns the taxing mechanism selected by the General Assembly rather than the tax itself. The plaintiffs contend that the current taxing scheme provides an exemption for vehicle operators who depart from McCormick Place in violation of the uniformity clause. It seems that the plaintiffs would have tax booths erected everywhere there likely would be a benefit due to the Expansion Project, rather than simply at the metropolitan airports.

It is undisputed that the ground transportation services in this case will benefit directly from the increased number of visitors due to the Expansion Project. The present scheme provides a workable method to tax those who will benefit directly from the Expansion Project—vehicle operators as a whole. The plaintiffs do not dispute that the McCormick expansion will bring an increased number of visitors to the city who will demand commercial ground transportation services during their stay. It follows that taxi drivers and other vehicle operators will experience an increase in business, as well as profits. The General Assembly's decision to tax the additional profits through the Departure Tax is reasonably related to the goal of financing the Expansion Project. The uniformity clause does not require that those who pay a given tax receive the sole benefit from the tax. (*Northern Illinois Home Builders Association, Inc. v. County of Du Page* (1993), 251 Ill. App. 3d 494, 505, 621 N.E.2d 1012, 1021-22.) Therefore, we conclude that the Departure Tax does not violate the

uniformity clause. Hence, the tax is also constitutional under principles of equal protection and due process.

■ Finally, we note that the plaintiffs' claim that the tax infringes on their fundamental right to travel also fails. The fundamental right to travel is implicated only when a given law actually deters travel, when impeding travel is the primary objective or when it "penalizes" the exercise of that right, and that is not the case here. *Northern Illinois Home Builders Association, Inc.*, 251 Ill. App. 3d at 506, 621 N.E.2d at 1022; *Attorney General of New York v. Soto-Lopez* (1986), 476 U.S. 898, 90 L. Ed. 2d 899, 106 S. Ct. 2317.

IV. Commerce Clause

The plaintiffs also argue that the circuit court erred in dismissing its allegations concerning the interstate commerce clause of the United States Constitution. (U.S. Const., art. I, § 8.) However, the plaintiffs have not pleaded how they are a part of interstate commerce. Even if interstate commerce is somehow implicated, the plaintiffs' claim fails nonetheless.

■ In *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076, the United States Supreme Court constructed a test for determining the constitutionality of a tax affecting interstate commerce. Under the test (1) the activity taxed must have a substantial nexus to the taxing jurisdiction, (2) it must be fairly apportioned, (3) it must not discriminate against interstate commerce, and (4) it must be fairly related to the service provided by the State. The plaintiffs contend that the Departure Tax discriminates against interstate commerce because it is charged and collected only at commercial service airports. They also claim that the tax fails the final prong of the *Complete Auto* test because it is not fairly related to the services provided by the State.

As in *Geja's*, the plaintiffs' argument here does not reflect a full understanding of the goals of the commerce clause. The commerce clause prohibits economic protectionism in the form of statutory mechanisms which burden out-of-State economic competitors and benefit in-State interests. (*Geja's*, 153 Ill. 2d at 256, 606 N.E.2d at 1219, quoting *New Energy Co. v. Limbach* (1988), 486 U.S. 269, 273-74, 100 L. Ed. 2d 302, 308, 108 S. Ct. 1803, 1807.) The commerce clause is not designed to protect State residents from their own State taxes. *Geja's*, 153 Ill. 2d at 256, 606 N.E.2d at 1219; *Goldberg v. Sweet* (1989), 488 U.S. 252, 102 L. Ed. 2d 607, 109 S. Ct. 582.

■ The plaintiffs have alleged no facts in the circuit court which would justify the invalidation of the Departure Tax under the four-part test set forth in *Complete Auto*. The plaintiffs have not shown how the Departure Tax discriminates against interstate commerce.

The tax is clearly imposed on vehicle operators doing business in the State of Illinois. The tax makes no distinction between out-of-State competitors who may come to Illinois to provide ground transportation and in-State services which do the same. Therefore, we find that the third prong of the *Complete Auto* test is satisfied, as the tax does not discriminate against interstate commerce.

Also, nothing in the complaint suggests that the tax is not fairly related to services provided by the State. (See generally *Department of Revenue v. Association of Washington Stevedoring Cos.* (1978), 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388.) When a tax is wholly within a State, and is applied in a nondiscriminatory manner, falling on residents and nonresidents alike, then the final prong of the *Complete Auto* test is easily satisfied. See *Goldberg v. Sweet* (1989), 488 U.S. 252, 266, 102 L. Ed. 2d 607, 620, 109 S. Ct. 582, 591; *Geja's*, 153 Ill. 2d 239, 606 N.E.2d 1212.

Here, the vehicle operators enjoy the advantages of a civilized society in that they receive police protection, the use of the roads and the services provided by the State in relation to the roads, fire protection and many other benefits provided by the State. Most significantly, however, the operators will experience increased profits due to the Expansion Project.

■ Finally, we consider whether the circuit court erred by denying the plaintiffs' request to file a third amended complaint and dismissing this case with prejudice.

Although it is true that courts should be liberal in allowing amendments (*Stringer Construction Co. v. Chicago Housing Authority* (1990), 206 Ill. App. 3d 250, 563 N.E.2d 819), a court may deny a plaintiff's request to amend if it is apparent that even after amendment, no cause of action can be stated. (*Bowers v. Du Page County Regional Board of School Trustees District No. 4* (1989), 183 Ill. App. 3d 367, 539 N.E.2d 246; *Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 431 N.E.2d 1175; *Westgate Terrace Community Associates, Inc. v. Burger King Corp.* (1978), 66 Ill. App. 3d 721, 383 N.E.2d 1355.) The court's order dismissing a case with prejudice will only be reversed if there has been an abuse of discretion. *Bowers*, 183 Ill. App. 3d at 381, 539 N.E.2d at 255.

Here, the court previously allowed the plaintiffs two opportunities to amend their complaint. More importantly, however, the plaintiffs cannot plead any set of facts that will state a claim upon which relief can be granted because we have determined that the Departure Tax is constitutional under both the Illinois and United States Constitutions. Hence, we conclude that the circuit court properly denied the plaintiffs leave to file a third amended complaint.

The circuit court's order dismissing the case with prejudice is affirmed.

Affirmed.

CAHILL and S. O'BRIEN, JJ., concur.